123 F.3d 1189
 97 Daily Journal D.A.R. 11,265
 WESTERN RADIO SERVICES COMPANY, INC., an Oregon Corporation;
Richard L. Oberdorfer, Plaintiffs-Appellants,
v.
Daniel GLICKMAN, in his official capacity as Secretary,
United States Department of Agriculture; Jack Ward Thomas,
Chief, National Forest Service; John Lowe, Regional
Forester, Richard A. Ferraro, Deputy Regional Forester; Tom
Schmidt, Forest Supervisor; Byron Cheney, District Ranger,
Defendants-Appellees,
and
Slater Communications & Electronics, Inc., Intervenor.
 No. 95-36004.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 6, 1997.
Decided June 20, 1997.
As Amended Aug. 28, 1997.
 
 Ralph A. Bradley, Eugene, OR, for plaintiffs-appellants Western Radio & Oberdorfer.
 Tamara N. Roundtree, United States Department of Justice, Washington, DC, for defendants-appellees.
 Rose M.Z. Freeby, Evans, Freeby and Jennings, Salem, OR, for intervenor.
 Appeal from the United States District Court for the District of Oregon; Malcolm F. Marsh, District Judge, Presiding. D.C. No. CV-95-0679-MFM.
 Before: FLETCHER and TASHIMA, Circuit Judges, and SCHWARZER,* District Judge.
 FLETCHER, Circuit Judge:
 
 
 1
 Appellants Western Radio Services, Co., Inc. ("Western"), an operator of telecommunications facilities in various national forests in Oregon, and Richard L. Oberdorfer, president of Western, but suing in his individual capacity, appeal the dismissal[1] of their action under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, and the National Forest Management Act ("NFMA"), 16 U.S.C. § 497. Appellants sought to enjoin the United States Forest Service ("Service") from permitting Slater Communications & Electronics, Inc., ("Slater") to construct a telecommunications facility on Gray Butte in the Crooked River National Grassland in the Ochoco National Forest. The district court held that most of Appellants' claims were barred by res judicata because their claims arose out of the same set of facts that were litigated in Western Radio Serv. Co., v. Espy, 79 F.3d 896 (9th Cir.) (Western Radio I ), cert. denied, --- U.S. ----, 117 S.Ct. 80, 136 L.Ed.2d 38 (1996), or were unripe (the challenge against a proposed road construction project). We have jurisdiction under 28 U.S.C. § 1291. We affirm its judgment.I. BACKGROUND
 
 A. Western Radio I
 
 
 [2]
 
 
 
 
 2
 Western and Slater have operated radio towers on the Gray Butte Electronic site since the late 1970's. In November, 1992, the Service issued Slater a special use permit to construct a telecommunications facility approximately 200 feet from one of Western's towers on Gray Butte. Prior to issuing the permit, the Service prepared a supplement to the environmental assessment ("EA") for the Gray Butte Electronic Site Management Plan. The supplement considered the impact that the Slater facility would have on the environment. The Service concluded that construction of the facility would have no significant impact on the environment.
 
 
 3
 In May, 1993, Western filed an action seeking declaratory and injunctive relief against the Service's issuance of this permit. Western's complaint alleged that the Service's decision to issue Slater a special use permit violated NFMA, 16 U.S.C. § 497, because the agency allegedly had failed to comply with applicable regulations.[3] See Western Radio I, 79 F.3d at 899. Western also alleged that issuance of the permit violated NEPA, 42 U.S.C. § 4321, because the Service failed adequately to consider reasonable alternatives in the preparation of its environmental assessment. Id.
 
 
 4
 On May 3, 1994, the district court granted the Service's motion for summary judgment against Western. The court held that under NFMA and the applicable regulations, the Service had not abused its discretion in issuing the special use permit to Slater. It also held that Western lacked standing to bring a NEPA claim, relying on Nevada Land Action Ass'n v. United States Forest Serv., 8 F.3d 713 (9th Cir.1993) (holding no standing under NEPA where plaintiff asserted only economic injury). The court also noted that even if Western had standing, the construction of Slater's facility was not a "major" federal action having a "significant impact" on the environment which would trigger additional NEPA requirements. Western appealed to this court; we affirmed. See Western Radio I, 79 F.3d at 903.
 
 
 5
 B. Events Occurring After Decision in Western Radio I
 
 
 6
 After the district court's decision in Western Radio I, several events occurred upon which Western bases its current claims. First, on July 25, 1994, the Service issued a notice proposing construction of an access road along the east side of Gray Butte which would, among other things, provide direct access to the new Slater facility. Plans for this access road were specifically rejected in the Service's 1992 supplement to the EA for the Gray Butte Electronic Site Management Plan. Second, on July 28, 1994, the Service sent Western a letter informing it that the Service would not consider acting on Western's application for a special use permit to build additional antennas on Gray Butte until Slater's facility was complete.
 
 
 7
 Meanwhile, due to planning and design delays, Slater did not complete construction of its telecommunications facility before expiration of the original special use permit-December 31, 1994. The Service reissued Slater's special use permit on January 11, 1995. This permit was identical to the original special use permit except for the dates of issuance and expiration. After Slater obtained its reissued permit, it began construction in May, 1995, on a location slightly less than 200 feet from the Western facility. The Service had asked Slater to move its tower about 15 feet to this location, a change from Slater's planned location but still within the permitted area, to accommodate plans for a new access road which was then under consideration.
 
 
 8
 Western and Oberdorfer filed this action May 22, 1995. The complaint was accompanied by a motion for a temporary restraining order and a preliminary injunction to restrain the Service from allowing Slater to perform any further work under its renewed special use permit pending the Service's compliance with NEPA, NFMA, the Administrative Procedure Act, ("APA"), 5 U.S.C. § 706(2), and all applicable regulations.
 
 C. Procedural History
 
 9
 On May 26, 1995, the district court granted Western's motion for a temporary restraining order and granted Slater's motion to intervene as a defendant. On May 30, 1995, however, the district court vacated the restraining order, finding no evidence of irreparable harm in allowing Slater to finish constructing its facility. Slater subsequently completed its tower, which currently is operational.
 
 
 10
 On July 10, 1995, the district court, relying on res judicata, dismissed Western's complaint. The court concluded that Appellants were "attempting [to] circumvent this Court's prior ruling by arguing that Slater's January, 1995 permit constitutes a 'new' decision, when the record establishes that the January, 1995 permit is merely the re-issuance of an earlier permit which was issued upon the same November 19, 1992 administrative decision challenged in Western Radio I." The district court held that res judicata also barred Oberdorfer's NEPA claim against the Service for allowing Slater to build its tower on the location on which he enjoyed sunbathing. "[G]iven the undisputed alignment of Oberdorfer's interests with that of his company, Western Radio, there is no question that plaintiffs could have raised their aesthetic injury claim with the last action." The court also found that Slater's tower, built approximately 200 feet from Western's tower, was in compliance with the permit. Finally, the court held that the claims against the Service for violation of NEPA in constructing the access road were not ripe for review since the Service had not yet approved the road's construction.
 
 
 11
 This appeal followed.
 
 II. STANDARD OF REVIEW
 
 12
 This court reviews de novo a district court's dismissal based on res judicata. United Parcel Serv., Inc. v. California Pub. Util. Comm'n, 77 F.3d 1178, 1182 (9th Cir.1996).
 
 III. DISCUSSION
 
 13
 We must determine whether the district court erred in dismissing Appellants' claims based on res judicata. Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action. Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427-28, 69 L.Ed.2d 103 (1981); Costantini v. Trans World Airlines, 681 F.2d 1199, 1201-02 (9th Cir.1982). In order for res judicata to apply there must be: 1) an identity of claims, 2) a final judgment on the merits, and 3) identity or privity between parties. Blonder-Tongue Lab. v. University of Ill. Found., 402 U.S. 313, 323-24, 91 S.Ct. 1434, 1439-40, 28 L.Ed.2d 788 (1971).
 
 
 14
 The legal harm alleged in Western Radio I was the issuance of the November, 1992, special use permit without compliance with procedures required under NEPA and NFMA. See Western Radio I, 79 F.3d at 899. This court ruled that Western's claims under NEPA failed for lack of standing, because purely economic harm is not protected under NEPA, and that the Service did not violate NFMA or abuse its discretion under the APA in issuing Slater a special use permit. Id. at 902-03. We agree that all of Appellants' claims save two-the Ashbacker claim and the access road claim-though characterized as based on events which occurred after our opinion in Western Radio I, are barred by res judicata.
 
 A. Challenge to Distance Between Towers
 
 15
 Appellants allege that the Service has violated NEPA, NFMA, and the APA by allowing Slater to construct its telecommunications facility in a manner inconsistent with the supplemental EA and the amended site plan. To support this claim, Appellants point to the fact that the tower was built less than 200 feet from the Western facility, which they argue violates the terms of the special use permit.
 
 
 16
 The special use permit allowed "[n]ew construction of a 12 X 20 building, 100 foot self-supporting tower and access road to site # 2 as per amended site plan for the Gray Butte Electronic Site...." The Gray Butte Electronic Site plan merely described site number two as being "approximately 200 feet southeast of the existing Western Radio tower."
 
 
 17
 Throughout the litigation of Western Radio I, Slater planned to build the tower on a particular spot located approximately 200 feet from the existing Western facility. Western raised no complaint in Western Radio I with respect to the location of the tower.
 
 
 18
 After the conclusion of Western Radio I, Slater began building its tower less than 200 feet from the Western facility. Appellants argue that this breach of the permit gives rise to a new claim, namely that Slater is violating a condition of the special permit which requires that the facility be built "approximately 200 feet" from the Western facility. Appellants argue that, when measuring horizontal distance between telecommunications facilities, measurements are not made from the middle of structures but rather, from the outermost edges of the antennas, which in this case is only 160 feet.
 
 
 19
 The district court noted that the original permit contains no specific distance limitation, but merely references specifications in the approved plan which contemplates construction "approximately 200" from Western's facility. The court concluded "Slater's tower will be 194' from plaintiff's facility by measuring from tower center to tower center, and thus, actual construction is not violating any permit or plan specification." We agree.
 
 
 20
 B. Appellants Have Not Asserted a Valid Ashbacker Claim
 
 
 21
 In 1991, Western applied for space on top of Gray Butte for installation of side-hill antennas. Subsequently, Slater applied to move some of its facilities to the same site. Western alleges that it was not until July 28, 1994--two months after the decision in Western Radio I--that it learned that the Service would not grant its permit application because of possible interference problems with Slater.[4] Western argues that these circumstances give rise to an Ashbacker claim. Ashbacker Radio Corp. v. FCC, 326 U.S. 327, 333, 66 S.Ct. 148, 151, 90 L.Ed. 108 (1945), requires consolidated consideration of mutually exclusive license applications. See Washington Util. & Transp. Comm'n v. F.C.C., 513 F.2d 1142, 1165-66 (9th Cir.1975). Ashbacker involved two applications for broadcasting authority that were actually exclusive in the sense that the broadcast signals would interfere with each other. Ashbacker, 326 U.S. at 332, 66 S.Ct. at 150-51. Only one of the two applications could be granted. Id.
 
 
 22
 Western's reliance on Ashbacker fails for two reasons. First, Ashbacker does not apply to the Service's decision to grant a special use permit. See Western Radio Serv. Co. v. Glickman, 113 F.3d 966, 971-73 (9th Cir.1997) (explaining in depth why Ashbacker does not apply to Service's decision to grant a special use permit).
 
 
 23
 Second, even if Ashbacker did require the Service to consolidate consideration of mutually exclusive permit applications, Western's and Slater's applications are not mutually exclusive in the sense that Ashbacker contemplates. "Mutually exclusive" applications are those which compete for a single available authorization; the grant to one applicant absolutely precludes all other applicants from operating in the location at issue. See Public Util. Comm'n v. FERC, 900 F.2d 269, 277 n. 6 (D.C.Cir.1990) ("It is economic not legal mutual exclusivity that triggers Ashbacker "); see also, Washington Util. & Transp. Comm'n, 513 F.2d at 1166 (rejecting Ashbacker claim where mutual exclusivity did not exist). The Service's letter demonstrates that the decision to issue Western a special use permit has only been "postpone[d]." Ultimately the Service may allow both Western and Slater to operate at the Gray Butte Electronic Site.
 
 
 24
 The district court did not address Appellants' Ashbacker claim other than to note that their objection to the denial of their own request for a new permit "clearly could have been raised in the prior proceeding." We disagree with this conclusion since, arguably, Appellants did not know that their application and Slater's were somehow related until they received the Service's letter, and because their application had not been denied by the Service. Since we find, however, that Western has not raised an Ashbacker claim, the claim was properly dismissed.
 
 C. The Access Road
 
 25
 1. The Reissuance of the Special Permit Did Not Require a New EA
 
 
 26
 NEPA requires federal agencies to prepare an environmental impact statement ("EIS") for all "major federal actions significantly affecting the quality of the human environment." 42 U.S.C. 4332(2)(c).[5] The EIS must be prepared before the agency commits resources to any one alternative approach for the project. 40 C.F.R. § 1502.2(f).
 
 
 27
 Often, an agency will first prepare an EA to determine whether it needs to prepare a more detailed EIS. 40 C.F.R. § 1508.9(a)(1). An EA must "[b]riefly provide sufficient evidence and analysis" to determine whether the agency must prepare an EIS or, in the alternative, issue a finding of no significant impact ("FONSI"). Id. A FONSI is a document issued in conjunction with an EA that "briefly explains why an action ... will not have a significant effect on the human environment for which an [EIS] therefore will not be prepared." 40 C.F.R. § 1509.13.
 
 
 28
 Appellants argue that the Service acted arbitrarily and capriciously, in violation of the APA, by reissuing the Slater permit without conducting a new EA. They claim that because the Service proposed building a major access road along Gray Butte, between the issuance of the first permit and the second, the Service was required to conduct a new EA taking into account the effects of the road on the environment before reissuing the second permit. Appellants argue that a new EA is required because the Slater facility and the new road are "connected actions."[6] See Thomas v. Peterson, 753 F.2d 754, 758 (9th Cir.1985) (explaining CEQ regulations requiring "connected actions" to be considered together in a single EIS). Western argues that to allow the Service to reissue the permit without providing a new EA allows the project to be "segmented" into parts resulting in circumvention of NEPA's protections.
 
 
 29
 Western is correct in noting this Court's firm rejection of agency attempts to bypass NEPA's protections by illegally segmenting projects in order to avoid consideration of an entire action's effects on the environment. See, e.g., Id. at 758-59 (holding that the construction of a road to facilitate logging and the sale of the timber that would result from that logging were "connected actions" that had to be addressed in a single EIS); Port of Astoria v. Hodel, 595 F.2d 467, 477-78 (9th Cir.1979) (holding that an agency's EIS had to consider both the supplying of federal power and the construction of a private magnesium plant that used the power because the two actions were connected).
 
 
 30
 Western is incorrect, however, in asserting that segmentation occurred here and that an EA, including the effect of the proposed access road on Gray Butte, was required when the permit was reissued. When Slater's original special use permit was issued in November, 1992, the Service assessed the impact of the Slater facility on the environment. Construction of the communications facility required only a small area to be cleared for the tower's foundation. Access to the tower was to be gained by construction of a small spur road which would connect to an already existing access road. The Service issued a FONSI with respect to construction of the Slater tower and issued a special use permit for its construction.
 
 
 31
 This permit expired December 31, 1994, before Slater constructed the tower. The Service reissued the permit, granting Slater an extra year to complete construction without conducting a new EA. After the Service reissued the special use permit, it asked Slater to move the location 15 feet from where it had intended to build its telecommunications facility in order to preserve the possibility of placing an access road along a particular path along the east side of Gray Butte, should such a plan ultimately be approved. The Service concedes that an EA is required before construction of a new access road and intends to complete one.
 
 
 32
 Western argues that there is an undeniable connection between the proposed access road and the tower, and that allowing construction of the tower without first having taken into account the effects of the road on the environment in the form of a new EA, violated regulations implemented under NEPA. We find, however, that slightly modifying an existing project, in a way which has no effect on the environment, in order to keep open a possibility for a future action, does not make the two projects "connected actions." The road is not necessary to the operation of the tower.
 
 
 33
 Applying the three definitions of "connected actions" in the regulations to the facts of this case, we conclude that the tower project and the access road are not "connected actions." 40 C.F.R. § 1508.25(a)(1). Actions are connected if they "automatically trigger other actions which may require [an EIS.]" 40 C.F.R. § 1508.25(a)(1)(i). Construction of the telecommunications facility does not automatically require construction of the access road. The tower has remained operational during the past two years during which time there has been no public access to the tower. If the new road is never built, the tower can still remain operational. Actions are connected if they "cannot or will not proceed unless other actions are taken previously or simultaneously." 40 C.F.R. § 1508.25(a)(1)(ii). The fact that the tower has been built and is operational shows that it can exist without any further action on the part of the Service or any other federal agency. Finally, actions are connected if they "are interdependent parts of a larger action and depend on the larger action for their justification." 40 C.F.R. § 1508.25(a)(1)(iii). The record supports the conclusion that the tower does not depend in any way on the future construction of the access road.
 
 
 34
 Furthermore, the situation in this case is wholly different from Peterson where we found that the Service had to consider the effects of constructing a logging road and conducting a timber sale in a single EIS, prior to approving construction of the road. 753 F.2d at 758. Constructing the road served no purpose other than to aid the removal of timber from the area. The Service had written that "[t]he need for a transportation route in the assessment area is to access the timber land to be developed over the next twenty years." Id. This Court concluded "[i]t is clear that the timber sales cannot proceed without the road, and the road would not be built but for the contemplated timber sale." Id. (emphasis added). It cannot be said that the tower would not be built but for construction of the access road. The fact that the telecommunications facility has functioned during the past two years proves otherwise. Thus, under Peterson, as well as the regulations, the Slater tower and the access road are not "connected actions" requiring a single EA. 753 F.2d at 758-59, 40 C.F.R. § 1508.25(a)(1).
 
 
 35
 The original EA, prepared in 1992, concluded that the tower would have no significant effects on the environment. Because the reissued permit is identical in every material respect to the original permit, and because construction of the tower is not in any way conditioned on construction of the new access road, we hold that it was not arbitrary, capricious or an abuse of discretion for the Service to reissue the special use permit without preparing a new EA. See Abenaki Nation of Mississquoi v. Hughes, 805 F.Supp. 234, 240-242 (D.Vt.1992) (finding that the Corps of Engineers need not undertake a new environmental assessment in order to reissue a permit which was reissued in essentially its original form), aff'd, 990 F.2d 729 (2d Cir.1993).[7]
 
 
 36
 Therefore, while we disagree with the district court's conclusion that Appellant's claim of unlawful segmentation could have been raised in the prior proceeding, we find that the Service's decision to reissue the special use permit without conducting a new EA was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 702(2); Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 414, 91 S.Ct. 814, 822-23, 28 L.Ed.2d 136 (1971).
 
 2. Oberdorfer's NEPA Claim
 
 37
 Oberdorfer argues that even if Western does not have a claim under the APA and NEPA for the Service's failure to prepare an EA prior to reissuing the permit, he may bring a claim under NEPA individually, alleging injury to his aesthetic interests. He bases his claim on the Service's request that Slater move its facility 15 feet in order to preserve a possible route for the new access road--this is the exact location he used for aesthetic and spiritual enjoyment.
 
 
 38
 However, once the Service granted Slater a valid special use permit, taking into account the environmental impact of the project, the fact that the location of the tower was moved 15 feet one way or the other within the permitted area does not entitle Oberdorfer to demand a new process under NEPA. Oberdorfer, though bringing his claim individually, cannot by this ruse avoid the bar of res judicata. As president of Western, Oberdorfer was deeply involved and fully informed as to the terms of the original special use permit. He was in privity with Western. See Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1277 (9th Cir.1992) (noting that a person can be bound by a prior judgment, even if not involved in that litigation, if that person was in privity with the parties to the original litigation). He could have and should have raised in Western Radio I any claims that certain areas within the scope of the permit had some special aesthetic and spiritual significance.[8]
 
 
 39
 3. A Direct Challenge to the Access Road is Not Ripe for Review
 
 
 40
 The APA provides for judicial review only of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The APA thus insulates from immediate judicial review the agency's preliminary or procedural steps. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 882, 110 S.Ct. 3177, 3185, 111 L.Ed.2d 695 (1990); California Dep't of Educ. v. Bennett, 833 F.2d 827, 833 (9th Cir.1987) ("A court looks to whether the agency action represents the final administrative word to insure that judicial review will not interfere with the agency's decision-making process.").
 
 
 41
 Appellants challenge the Service's decision to build an access road along Gray Butte. The district court correctly concluded that Appellants cannot challenge the proposed road construction until the Service has made a final decision on the project. Agency action is "final" if at least two conditions are satisfied: "First, the action must mark the 'consummation' of the agency's decisionmaking process ...--it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.' " Bennett v. Spear, --- U.S. ----, ----, 117 S.Ct. 1154, 1168, 137 L.Ed.2d 281 (1997) (citations omitted). Here, the Service has not concluded its EA with respect to the Gray Butte access road. Until the Service actually makes a final decision regarding the road, a challenge to the access road under NEPA is not ripe for review.
 
 CONCLUSION
 
 42
 The district court properly concluded that a direct challenge to the Service's decision to approve a new access road is not ripe for review. It also properly dismissed Appellants' claims on res judicata grounds, save for the Ashbacker and access road claims. Because the record is sufficiently developed for us to determine that these claims should be resolved in Appellees' favor, we affirm the district court's decision. We also hold that Oberdorfer's individual claim is barred by res judicata.
 
 
 43
 Appellees are awarded costs. No parties shall receive attorney's fees on appeal.
 
 
 44
 AFFIRMED.
 
 
 
 *
 The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 The record upon which the district court based its dismissal were the pleadings and the submissions of the parties in connection with Western's request for a restraining order. Although characterized as a Rule 12(b)(6) dismissal the court's ruling must be treated as a summary judgment since both parties had an opportunity to make submissions on the matters outside the pleadings that were relied upon by the court. Fed.R.Civ.P. 12(b)
 
 
 [2]
 A more specific account of the background of Western Radio I is found in that opinion. 79 F.3d at 898-99
 
 
 [3]
 The Service has adopted regulations setting forth standards governing the issuance of special use permits. See 36 C.F.R. § 251.50-251.54(i)
 
 
 [4]
 A letter, written by the Service to Western, stated:
 This letter is to inform you that I have decided to postpone action on your request for additional sidehill antennas at Gray Butte pending completion of Slater Electronic's new building and tower. The reason for this decision is to complete Slater's facility prior to allowing other concurrent activities which may conflict with one another. In addition, I have been advised by our Radio Communication Specialist that the interference occurring at this time may be reduced significantly when Slater's new building and tower are operational and the old facilities have been removed.
 
 
 [5]
 An EIS is a detailed document discussing "significant environmental impacts" of the federal project. 40 C.F.R. § 1502.1
 
 
 [6]
 Connected actions are those which:
 (i) Automatically trigger other actions which may require environmental impact statements.
 (ii) Cannot or will not proceed unless other actions are taken previously or simultaneously.
 (iii) Are interdependent parts of a larger action and depend on the larger action for their justification.
 
 
 [40]
 C.F.R. § 1508.25(a)(1) (1996)
 
 
 [7]
 Appellants' primary claim is that the Service violated the APA by failing to conduct a new EA taking into account the effects of the access road on the environment. They also contend, however, that the Service was required to conduct a new EA because the Service must always conduct an environmental assessment before issuing a special use permit. See 36 C.F.R. § 251.54(f)(1) (noting that before issuing a special use permit, the Service "will assess the applicant's qualifications; complete an environmental analysis, assessment and/or an environmental impact statement under [NEPA]."). The record indicates that the Service fulfilled its obligations under the regulations by making a determination prior to reissuing the permit that there was "no new evidence to suggest that the previous decision is no longer appropriate."
 
 
 [8]
 We have no occasion here to decide whether the claims he raises here are cognizable under NEPA. We conclude only that any cognizable claims should have been raised in Western Radio I, and are thus barred by res judicata