159 F.3d 374
 41 Fed.R.Serv.3d 1223, 98 Cal. Daily Op. Serv. 7814,
98 Daily Journal D.A.R. 10,864
 Jose E. CABRERA, Plaintiff-Appellant,
v.
CITY OF HUNTINGTON PARK; Frank Sullivan, Chief of Police
sued as an individual & in an official capacity; Unknown
Sanford, Police Officer; A. Luna, Police Officer; N.
Mongan, Police Officer; Unknown Deers, Sergeant,
Defendants-Appellees.
Jose E. CABRERA, Plaintiff-Appellant,
v.
CITY OF HUNTINGTON PARK; David Sanford, Police Officer;
Antonio Luna; James Fimbres; Robert Valencia;
Neal Mongan; William Diers, Defendants-Appellees.
 Nos. 96-55268, 97-55431.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 4, 1997.
Decided Oct. 16, 1998.
 
 James S. Muller, Law Offices of James S. Muller, Los Angeles, California, for plaintiff-appellant.
 Steven N. Skolnick, Bonnie Yates, and Jonathan Bailey Lappen, Steven N. Skolnick Law Offices, Santa Monica, California, for defendants-appellees.
 Appeals from the United States District Court for the Central District of California; James M. Ideman, District Judge, Presiding. D.C. No. CV-95-02359-JMI. D.C. No. CV-96-05993-JMI-RNB.
 Before: KOZINSKI, TROTT and SILVERMAN,* Circuit Judges.
 PER CURIAM:
 
 
 1
 Jose E. Cabrera appeals the dismissal of his § 1983 action, see 42 U.S.C. § 1983 (1994), against the City of Huntington Park and several of its police officers (collectively, "Huntington Park").[1] The district court held that Cabrera's malicious prosecution claim was barred by res judicata because it constituted the same cause of action as a prior suit and that the rest of his § 1983 claims were barred by California's one-year statute of limitations, see Cal. Civ. Proc. Code § 340.3 (West 1998). For the reasons set forth below, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.
 
 I. FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 On August 7, 1992, Huntington Park police officers went to Salt Lake Park, in the City of Huntington Park, in response to a call concerning a fight between Cabrera's brother and his brother's girlfriend. Cabrera claims that, even though his only role was as a peacemaker, the police officers assaulted and battered him, breaking his legs in the process. Cabrera further alleges that the police officers used excessive force against him while he was in their custody at the arrest scene. In addition, Cabrera contends that he was then falsely arrested and later prosecuted on charges of disturbing the peace and resisting, delaying, and obstructing a peace officer in the discharge of his duty.
 
 
 3
 On August 8, 1992, Cabrera was released from police custody pursuant to a notice to appear. See Cal. Penal Code § 853.6 (West 1985). On August 25, 1992, criminal charges were filed against Cabrera for resisting arrest and disturbing the peace.
 
 
 4
 On April 12, 1995, Cabrera filed suit ("Cabrera I") against Huntington Park alleging that Huntington Park violated his constitutional rights, protected under § 1983, by detaining him without reasonable suspicion, subjecting him to excessive force, arresting him without probable cause, failing to prevent misconduct by other police officers, falsely imprisoning him, and interfering with his right to seek redress from his injuries by covering up the officer misconduct.
 
 
 5
 The prosecutor dismissed the resisting arrest charge prior to trial, and Cabrera was convicted of disturbing the peace and sentenced on April 27, 1994. While Cabrera I was pending, Cabrera's conviction was overturned, and Cabrera was acquitted of the disturbing the peace charge, on retrial, on September 14, 1995.
 
 
 6
 On June 16, 1995, Huntington Park, including police officers, Sanford, Luna, Mongan, and Diers, filed a motion to dismiss Cabrera's complaint contending that the complaint was barred by California's one-year statute of limitations. See Cal. Civ. Proc. Code § 340.3. According to Huntington Park, the statute of limitations ran for sixteen days in 1992, from August 9 through August 24. Then, Cal. Gov't Code § 945.3 (West 1995) tolled the statute of limitations from August 25, 1992 through April 27, 1994, while the criminal charge was pending before a court. Thus, the seventeenth day of the one-year period commenced running on April 28, 1994 with the three hundred and sixty-fifth day ending on April 11, 1995. Because Cabrera filed suit on April 12, 1995, his complaint was filed one day late and was barred by the statute of limitations.
 
 
 7
 However, the district court found that Cal.Civ. Proc. Code § 12 (West 1982) excludes the first day of a limitations period from the computation of a statute of limitations; therefore, Cabrera's complaint was timely filed because August 9, 1992 should be excluded from the limitations period.
 
 
 8
 Subsequently, police officers Valencia and Dimas moved for dismissal on identical grounds but, in addition, asserted that Ganahl v. Soher, 5 P. 80, 80-81 (Cal.1884), controlled the issue of counting. The officers argued that, under Ganahl, the first day after a tolling period ends should be included in counting the limitations period. The district court agreed and dismissed Cabrera's entire action as to all defendants.
 
 
 9
 On August 28, 1996, Cabrera filed a § 1983 action against Huntington Park claiming malicious prosecution ("Cabrera II").[2] These claims were related to the same series of events which were the subject matter of Cabrera I. Huntington Park moved to dismiss this complaint on the ground of claim preclusion and also moved for sanctions under Fed. R. Civ. P. 11. Huntington Park argued that either the malicious prosecution claim had been raised in Cabrera I or, alternatively, that the malicious prosecution claim should have been brought in the prior action.
 
 
 10
 On March 21, 1997, the district court dismissed with prejudice Cabrera II as barred by res judicata. The district court also awarded sanctions against Cabrera's attorney in the amount of $4000. Cabrera appeals these decisions.
 
 II. DISCUSSION
 
 11
 A. The Issues Raised in Cabrera I Regarding the Dismissal of the § 1983 claims
 
 
 12
 Cabrera argues that the district court erred in dismissing his § 1983 claims on statute of limitations grounds. We review de novo a district court's dismissal of a plaintiff's claims on statute of limitations grounds. See Grimmett v. Brown, 75 F.3d 506, 510 (9th Cir.1996). Similarly, the district court's interpretation of California state law is subject to our de novo review. See Huey v. Honeywell, Inc., 82 F.3d 327, 329 (9th Cir.1996). However, this Court's duty is "to ascertain and apply the existing California law, not to predict that California may change its law and then to apply [our] notion of what that change might or ought to be." Klingebiel v. Lockheed Aircraft Corp., 494 F.2d 345, 346 (9th Cir.1974).
 
 
 13
 To support this claim of error, Cabrera first contends that the first day after the tolling of the statute of limitations ends is excluded pursuant to Cal. Civ. Proc. Code § 12. Under section 12, "[t]he time in which any act provided by law is to be done is computed by excluding the first day, and including the last, unless the last day is a holiday, and then it is also excluded." Cabrera advocates that section 12's counting method should apply whether or not the statute of limitations begins to run immediately or after a tolling period ends. Accordingly, Cabrera submits that, in the instant case, because he was under the disability of imprisonment on August 7 and 8, the district court should not have counted August 9 as part of the one-year limitations period. We disagree.
 
 
 14
 In 1884, the California Supreme Court addressed whether the day after the plaintiff's disability ceased should be included or excluded in the computation of the statute of limitations period. See Ganahl, 5 P. at 81. The California Supreme Court held that the statute of limitations begins to run immediately after a disability period ends. See id.;[3] see also N.J. Marini, Annotation, Inclusion or exclusion of first and last day for purposes of statute of limitations, 20 A.L.R.2d 1249, 1255 (1951) ("[T]he first day after the disability ceases is to be included in the computation of the period of time limited by statute in which to bring the action after the disability ceases.").
 
 
 15
 Despite its age, the Ganahl holding is still good law.[4] See In re Harris, 5 Cal.4th 813, 21 Cal.Rptr.2d 373, 855 P.2d 391, 412 n. 18 (1993) (the California Supreme Court rejects challenges to Ganahl 's status as precedent). Absent an overruling decision or a subsequent legislative change, this court is bound by the California Supreme Court's interpretation of California's statute of limitations. See Moore v. Illinois Central R.R. Co., 312 U.S. 630, 633, 61 S.Ct. 754, 85 L.Ed. 1089 (1941), overruled on an unrelated point by Andrews v. Louisville & Nashville R.R. Co., 406 U.S. 320, 326, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972).
 
 
 16
 In addition, citing Alferitz v. Borgwardt, 126 Cal. 201, 58 P. 460, 461-62 (1899), Cabrera contends that Ganahl lacks precedential value because it fails to discuss and consider § 12. However, Alferitz speaks to the California Supreme Court's ability to overrule its own erroneous decisions. See id. Section 12 was enacted in 1872, twelve years before the Ganahl decision. Once again, absent a subsequent legislative change or an overruling decision, this court is bound by the California Supreme Court's interpretation of California limitation statutes. See Moore, 312 U.S. at 633, 61 S.Ct. 754.
 
 
 17
 As his second point of error, Cabrera argues that the district court erred by counting August 9-24, 1992 as part of the one-year limitations period. Cabrera contends that a notice to appear constitutes an "accusatory pleading," and the issuance of the notice to appear on August 8, 1992 was sufficient to commence tolling of the statute of limitations under Cal. Gov't Code § 945.3.
 
 
 18
 "In the absence of controlling state precedent, we must decide this question as the California Supreme Court would decide it." Elliott v. City of Union City, 25 F.3d 800, 802 n. 3 (9th Cir.1994). Section 945.3 provides that "[n]o person charged by indictment, information, complaint, or other accusatory pleading charging a criminal offense may bring a civil action ... while the charges against the accused are pending before a justice, municipal, or superior court." Cal. Gov't Code § 945.3 (emphasis added).
 
 
 19
 We recently construed section 945.3 in the context of this same argument in Torres v. City of Santa Ana, 108 F.3d 224, 226-27 (9th Cir.1997). In Torres, we held that charges are not pending before a court until the charges are filed with a court. See id. at 227.[5] Therefore, because the criminal complaint was not filed until August 25, 1992, the district court properly tolled the statute at that time.
 
 
 20
 As his third point of error, Cabrera argues that all of his § 1983 claims did not accrue until the conclusion of his criminal prosecution on September 14, 1995, the date of his acquittal, as opposed to August 7, 1992, the date of the alleged injury.
 
 
 21
 State law determines the statute of limitations for § 1983 suits. See Trimble v. City of Santa Rosa, 49 F.3d 583, 585 (9th Cir.1995) (per curiam). In California, a one-year statute of limitations applies to § 1983 actions. See id. However, federal law governs when a cause of action accrues and the statute of limitations begins to run in a § 1983 action. See Elliott, 25 F.3d at 801-02. Under federal law, the claim generally accrues when the plaintiff "knows or has reason to know of the injury which is the basis of the action." Id. at 802 (internal quotation marks and citation omitted). The accrual of a § 1983 claim depends upon the substantive basis of the claim.
 
 
 22
 In this case, the second amended complaint states the following claim for relief:
 
 
 23
 Defendants, acting under color of state law, deprived plaintiff of rights, privileges, and immunities secured by the Constitution and laws of the United States, including the Fourth and Fourteenth Amendments, by
 
 
 24
 (a) Detaining plaintiff without reasonable suspicion;
 
 
 25
 (b) Subjecting plaintiff to excessive force and threats of great bodily injury and death;
 
 
 26
 (c) Arresting plaintiff without probable cause and in an unreasonable manner;
 
 
 27
 (d) Failing to prevent the misconduct by other officers;
 
 
 28
 (e) Falsely imprisoning plaintiff; and
 
 
 29
 (f) Interfering with plaintiff's right to seek redress for his injuries by covering up for officer misconduct.
 
 
 30
 Although Cabrera's cause of action is somewhat amorphous, we construe this claim for relief as alleging claims for false arrest, false imprisonment, excessive force, and official cover-up of Fourth Amendment violations which resulted in obstruction of justice. As such, Cabrera seeks damages resulting from these alleged actions.
 
 In 1994, the Supreme Court held that
 
 31
 in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal.... Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.
 
 
 32
 Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (footnote omitted).[6] Therefore, if a judgment for Cabrera on the § 1983 claim "would necessarily imply the invalidity of his conviction," id. at 487, 114 S.Ct. 2364, Heck would bar Cabrera from bringing his cause of action until his conviction was overturned.[7] To prevail on his § 1983 claim for false arrest and imprisonment, Cabrera would have to demonstrate that there was no probable cause to arrest him. See George v. City of Long Beach, 973 F.2d 706, 710 (9th Cir.1992). The police claim hearing Cabrera's challenge to fight provided probable cause to arrest him for disturbing the peace. On these facts, finding there was no probable cause would "necessarily imply" that Cabrera's conviction for disturbing the peace was invalid. Therefore, under Heck, Cabrera's false arrest and imprisonment claims were not cognizable and did not accrue until his conviction was invalidated on September 14, 1995.[8]
 
 
 33
 On the other hand, Cabrera's claims for the use of excessive force and official cover-up of the alleged Fourth Amendment violations, if successful, would not necessarily imply the invalidity of his conviction. Therefore, the general rule applies: These claims accrued when Cabrera knew or had reason to know of the injury. For the excessive force claim, this was on August 7, 1992, the date of the arrest. The date the official cover-up claim accrued is less clear. In his complaint, Cabrera alleged that the defendants created "false and misleading reports on the incident" and falsified evidence. These things would have occurred at least by the time Cabrera's trial began on February 24, 1994. Therefore, because Cabrera filed both the excessive force and official cover-up claims on April 12, 1995, the statute of limitations barred them.
 
 
 34
 In conclusion, we hold that the district court properly found that the excessive force and official cover-up claims were barred by the statute of limitations. We vacate the district court's order dismissing Cabrera's claims of false arrest and false imprisonment and remand these claims for further proceedings in the district court.
 
 
 35
 B. The Issues Raised in Cabrera II Regarding the Dismissal
 
 
 36
 of the Malicious Prosecution Claim
 
 
 37
 Cabrera further argues that the district court erred in dismissing his malicious prosecution claim, raised in Cabrera II, on the basis of res judicata. "This court reviews de novo a district court's dismissal based on res judicata." Western Radio Servs. Co. Inc. v. Glickman, 123 F.3d 1189, 1192 (9th Cir.1997). Res judicata, also known as claim preclusion, prohibits the litigation in a subsequent action of any claims that were raised or could have been raised in the prior action. See id. For res judicata to apply, there must be: (1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties. See id.
 
 
 38
 In the present case, the parties only dispute whether the malicious prosecution claim raised in Cabrera II was in fact raised in Cabrera I or was identical to the claims alleged in the first case.[9] Determining whether Cabrera I actually included a malicious prosecution claim requires us to consider the effect of various stipulations in the prior suit.[10] Cabrera contends that these stipulations do not satisfy Fed. R. Civ. P. 15(d) regarding supplemental pleading because no motion was made and the district court never permitted such a supplemental pleading to be filed. Cabrera further argues that these stipulations do not satisfy Fed. R. Civ. P. 15(a) because no actual amended pleading was filed which stated a claim for malicious prosecution. We disagree.
 
 
 39
 Because Cabrera's malicious prosecution claim accrued after the filing of his initial complaint, Rule 15(d) applies. See United States v. Reiten, 313 F.2d 673, 674 (9th Cir.1963). "Rule 15(d) permits the filing of a supplemental pleading which introduces a cause of action not alleged in the original complaint and not in existence when the original complaint was filed." Id.[11] Although Cabrera never filed a formal "supplemental pleading," the erroneous characterization of the corrected pleading as a "second amended complaint" as opposed to a supplemental pleading is immaterial. See id. "This interpretation of Rule 15(d) is supported by the general purpose of the Rules to minimize technical obstacles to a determination of the controversy on its merits." Id. at 675.
 
 
 40
 Moreover, Cabrera's failure formally to plead a malicious prosecution claim either in an amended or supplemental pleading does not preclude the district court from considering the claim. The Federal Rules of Civil Procedure were designed, and should be interpreted and applied, to avoid such a technicality. See Dunn v. Trans World Airlines, Inc., 589 F.2d 408, 413 (9th Cir.1978). Under Fed.R.Civ.P. 15(b), "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Express consent to trial of an unpleaded issue may be given by stipulation. See Casey v. Lewis, 43 F.3d 1261, 1269 (9th Cir.1994), rev'd on other grounds, Lewis v. Casey, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) ("Express consent may be found in a stipulation or pre-trial order.") In this case, the second amended complaint, the parties' joint stipulations, and Cabrera's opposition to Huntington Park's motion to dismiss together sufficed to raise a malicious prosecution claim in Cabrera I.
 
 
 41
 Because we conclude that Cabrera did in fact raise a malicious prosecution claim in Cabrera I, we next must determine whether the district court erred in dismissing the malicious prosecution claim based upon the statute of limitations. Cabrera filed his initial complaint on April 12, 1995; however, Cabrera's malicious prosecution claim did not accrue until his acquittal on September 14, 1995. See Heck, 512 U.S. at 484-87, 114 S.Ct. 2364. As we outlined above, Cabrera supplemented his initial complaint to include the malicious prosecution claim. Because Cabrera's complaint was filed before the malicious prosecution cause of action even accrued, this claim was not barred by the applicable one-year statute of limitations. Therefore, we vacate the district court's judgment dismissing the malicious prosecution claim and remand this claim for further proceedings in the district court. In light of this disposition, the issue of claim preclusion is moot.[12]
 
 
 42
 Finally, Cabrera asks us to review the award of Fed.R.Civ.P. 11 sanctions against his attorney. However, we lack jurisdiction to review this award because Cabrera has no standing to appeal an order imposing sanctions against his attorney. See Estate of Bishop v. Bechtel Power Corp., 905 F.2d 1272, 1276 (9th Cir.1990).
 
 III. CONCLUSION
 
 43
 For the reasons set forth in this opinion, we affirm the district court's dismissal of Cabrera's § 1983 claims for excessive force and official cover-up of Fourth Amendment violations. However, we vacate the district court's order dismissing Cabrera's § 1983 claims for false arrest, false imprisonment, and malicious prosecution and remand for further proceedings consistent with this opinion.
 
 
 44
 * * * * *
 
 
 45
 AFFIRMED in part, VACATED in part, and REMANDED for further proceedings consistent with this opinion.
 
 
 
 *
 Pursuant to General Order 3.2.g, Judge Silverman was drawn to replace the Honorable Floyd R. Gibson, Senior Circuit Judge for the Eighth Circuit. Judge Silverman read the briefs and listened to the audio recording of the oral argument held on November 4, 1997
 
 
 [1]
 Cabrera filed suit against the following police officers: David Sanford, Antonio Luna, James Fimbres, Robert Valencia, Neal Mongan, and William Diers
 
 
 [2]
 Cabrera also brought claims for conspiracy and custom, policy, and practice to violate civil rights. However, Cabrera abandoned these claims and consented to their dismissal
 
 
 [3]
 In Ganahl, the California Supreme Court construed Cal. Civ. Proc. Code § 328 which is a tolling statute that applies in quiet title actions to toll the limitations statute while a minor plaintiff is unable to sue because he is under legal age. See Ganahl, 5 P. at 80. Section 328 grants plaintiffs five years to commence suit after their disability of infancy ceases. See id. The Ganahl plaintiff was born on April 11, 1855 and filed a quiet title suit on April 11, 1881. See id. The case hinged on whether April 11, 1876 was excluded or included in computation of the five-year period. The California Supreme Court concluded that, because the plaintiff was born on April 11, 1855, the last day he was under the age of twenty-one, which was the age of majority for males at this time, was April 10, 1876. Therefore, the California Supreme Court included April 11, 1876 in the computation of the statute of limitations period because "the plaintiff in question attained his majority the first minute of [April 11, 1876 and] ... had the whole of the day in which to sue." Id. at 81
 
 
 [4]
 Cabrera argues that the California Supreme Court implicitly overruled Ganahl in Dingley v. McDonald, 124 Cal. 90, 56 P. 790, 792 (1899) and Ley v. Dominguez, 212 Cal. 587, 299 P. 713, 715-16 (1931). We disagree. Dingley and Ley merely upheld the general applicability of the "first-day-exclusion rule" codified in section 12. Under section 12, when a statute refers to a specified period after an event, the correct method of computing time requires exclusion of the day on which the event occurs. See id. Neither Dingley nor Ley addressed the issue presented in Ganahl and the present case which involves the tolling of a limitations period on account of disability and whether the day after a disability ceases must be included or excluded from a limitations period. Therefore, neither Dingley nor Ley contradict, much less, overrule Ganahl
 
 
 [5]
 In Torres, we also found that a notice to appear did constitute an "accusatory pleading" under section 945.3. See id. at 226-27
 
 
 [6]
 While it is questionable whether Heck 's holding would command a majority of the Supreme Court today, see Spencer v. Kemna, 523 U.S. 1, ----, 118 S.Ct. 978, 990, 140 L.Ed.2d 43 (1998) (Ginsburg, J., concurring), Heck remains good law
 
 
 [7]
 As the Fourth Circuit has stated, Heck does not alter "the general rule that a § 1983 claim seeking damages for an allegedly unconstitutional warrantless arrest accrues when the plaintiff knows or should know of the injury-except in the limited circumstances ... when a § 1983 plaintiff's success on a claim that a warrantless arrest was not supported by probable cause necessarily would implicate the validity of the plaintiff's conviction or sentence." Brooks v. City of Winston-Salem, 85 F.3d 178, 183 (4th Cir.1996). While the facts of Cabrera's case fit it within Heck 's exception, see also Smithart v. Towery, 79 F.3d 951, 952 (9th Cir.1996) (per curiam) (Heck barred § 1983 claim for false arrest where plaintiff's conviction for assault had not been overturned), other Ninth Circuit cases that express the general rule survive Heck, see, e.g., Venegas v. Wagner, 704 F.2d 1144, 1146 (9th Cir.1983) (statute of limitations on a § 1983 false arrest claim accrues from the time of arrest). Thus, for example, a convicted thief's false arrest claim would accrue at the time of his arrest even after Heck
 
 
 [8]
 The fact that Cabrera filed suit before his conviction was overturned does not now affect the validity of his claim. At most, the district court should have dismissed it without prejudice. See Trimble v. City of Santa Rosa, 49 F.3d 583, 585 (9th Cir.1995) (per curiam)
 
 
 [9]
 No dispute exists concerning the last two elements because the current action is between the same parties as the prior suit, and the dismissal of Cabrera I constitutes a final judgment on the merits for res judicata purposes. See Gasho v. United States, 39 F.3d 1420, 1438 n.17 (9th Cir.1994)
 
 
 [10]
 These stipulations include the following: (1) the October 24, 1995 Joint Discovery Stipulation which stated that Cabrera "seeks damages including compensation for [Cabrera's] prosecution on false criminal charges;" (2) Cabrera's December 11, 1995 Opposition to Defendants' Motion to Dismiss which stated that:
 In his complaint, [Cabrera] alleges that defendants violated his constitutional rights protected by federal law--42 U.S.C. § 1983--by, inter alia, arresting him without probable cause and with excessive force. [Cabrera] seeks damages including compensation for [Cabrera's] prosecution on false criminal charges. ... [Cabrera's] claim for false arrest and the damages which flowed from the false arrest, ... and [Cabrera's] prosecution based on false criminal charges based upon that arrest should accrued [sic] on the date of his acquittal on September 14, 1995. ... [A]ll of [Cabrera's] claims (for excessive force, prosecution on false charges, false arrest and imprisonment, etc.), should be tolled until the conclusion of his criminal prosecution.
 (emphasis added); (3)the January 22, 1996 Joint Status Conference Report which stated that Cabrera's "conviction was overturned and he was acquitted of this charge in September of 1995. [Cabrera] contends that he was maliciously prosecuted in order to justify the use of force against him. ... The following issues are presented: ... Was [Cabrera] arrested and prosecuted without probable cause?" and (4) the February 6, 1996 Joint Discovery Stipulation which stated that Cabrera "seeks damages including compensation for [Cabrera's] prosecution on false criminal charges."
 
 
 [11]
 We note that supplemental pleading cannot be used to introduce a "separate, distinct and new cause of action" where the original action between the parties has reached a final resolution and the district court does not retain jurisdiction. Planned Parenthood of Southern Ariz. v. Neely, 130 F.3d 400, 402 (9th Cir.1997) (internal quotation marks and citation omitted). Thus, this rule does not apply in the instant case
 
 
 [12]
 In the alternative, we note that, even if Cabrera did not effectively raise his malicious prosecution claim in Cabrera I, res judicata still does not prevent him from litigating this claim in the second action because his malicious prosecution claim arose while Cabrera I was already pending. See Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist., 750 F.2d 731, 739 (9th Cir.1984) ("The rule that a judgment is conclusive as to every matter that might have been litigated 'does not apply to new rights acquired pending the action which might have been, but which were not, required to be litigated.' ") (citation omitted). See also Manning v. City of Auburn, 953 F.2d 1355, 1360 (11th Cir.1992) ("[W]e do not believe that the res judicata preclusion of claims that 'could have been brought' in earlier litigation includes claims which arise after the original pleading is filed in the earlier litigation.")