In the

# United States Court of Appeals
## For the Seventh Circuit

No. 01-3271

EDITH JONES, EUNICE YOUNG,
VIRGINIA CLARK, et al.,

*Plaintiffs-Appellees*,

*v.*

R.R. DONNELLEY & SONS COMPANY,
a Delaware Corporation,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96 C 7717—**Matthew F. Kennelly**, *Judge.*

ARGUED APRIL 4, 2002—DECIDED SEPTEMBER 16, 2002

Before RIPPLE, KANNE and EVANS, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Several classes of plaintiffs brought suit against their former employer, R.R. Donnelley & Sons ("Donnelley"), for race discrimination pursuant to 42 U.S.C. § 1981. Before the court is a single certified question: "[W]hether in a 1996 lawsuit brought under 42 U.S.C. § 1981 alleging race discrimination in termination of employment, and maintenance of a racially hostile work environment, the appropriate statute of limitations is the 'catch-all' four-year period enacted by Congress in

1990 and codified at 28 U.S.C. § 1658, or the personal injury statute of limitations of the forum state?" R.248 at 2. The district court determined that § 1658 provided the applicable statute of limitations for the plaintiffs' claims. Because we find ourselves in respectful disagreement with the district court, we reverse its decision and remand the case for further proceedings consistent with this opinion.

# I

## BACKGROUND

### A.

The plaintiffs are members of three classes of African-American former employees of Donnelley's Chicago Manufacturing Division, many of whom were terminated or transferred from their employment on or before July 29, 1994, in connection with the closing of that facility.[1] Their

---

[1] The district court certified three classes of employees:

> All African-American employees of R.R. Donnelley who were employed at the Chicago Manufacturing Division and who were discharged during the shutdown of that division and were not transferred to another Donnelley division;

> All African-American employees of R.R. Donnelley who were employed at the Chicago Manufacturing Division at any time from November 1991 to the present as non-regular employees (including temporary, casual, contract, contingent, task force, etc.);

> All African-American employees of R.R. Donnelley who worked at (a) the Dwight division; (b) the Pontiac division; (c) the Chicago Financial Division; or (d) the Chicago Manufacturing Division from November 1992 to present
> (continued...)

claims against Donnelley include discriminatory transfer, discriminatory termination and racially hostile work environment. They filed their initial pleading in this case on November 25, 1996.

In its answer, Donnelley raised the statute of limitations as an affirmative defense; Donnelley claimed that the "alleged 42 U.S.C. § 1981 claims which arose more than two years prior to the filing of the complaint are barred by the applicable statute of limitations." R.2 at 16. Soon after filing its answer, Donnelley moved for summary judgment on the claims of those plaintiffs whose employment was terminated on or around July 29, 1996.[2] According to Donnelley, this court's decision in *Smith v. City of Chicago Heights*, 951 F.2d 834, 836 n.1 (7th Cir. 1992), established that Illinois' two-year statute of limitations for personal injury claims was the applicable statute of limitations for claims of race discrimination arising in Illinois and brought under 42 U.S.C. § 1981. *See* R.10 at 2. Because the complaint was not filed until November 1996, more than two years after the plaintiffs' last employment at Donnelley, their claims were time-barred.[3]

---

[1] (...continued)
> and were subjected to racial harassment so pervasive as to create a hostile working environment.

R.230 at 39. The present issue concerns those individuals belonging to all of the classes whose employment was terminated on or about July 29, 1994.

[2] Donnelley's motion was not confined to the statute of limitations issue, but included other issues that are not before the court on this appeal.

[3] Donnelley also re-presented this issue at least two other times later in the litigation before the district court ruled on the motion.

In their response, the plaintiffs presented three reasons why their claims should be considered timely. First, the plaintiffs argued that the termination of their employment was part of a larger program of discrimination by Donnelley and that, consequently, "no statute of limitations should be imposed in this case." R.102 at 4. In the alternative, the plaintiffs submitted that the appropriate statute of limitations for violations of 42 U.S.C. § 1981 was the four-year statute of limitations provided in 28 U.S.C. § 1658. Specifically, the plaintiffs maintained that their claims arose under amendments to § 1981 enacted through the Civil Rights Act of 1991. Their claims, therefore, arose under the 1991 Civil Rights Act, a law enacted after § 1658, and therefore were subject to § 1658's four-year statute of limitations. Finally, the plaintiffs argued that the doctrines of equitable estoppel and equitable tolling should apply to extend the statute of limitations to allow the plaintiffs to maintain their claims.

## B.

The parties eventually narrowed the issue to be resolved by the district court: The appropriate statute of limitations to apply to the claims of those plaintiffs whose employment was terminated in conjunction with the closing of the Chicago facility. The district court began its analysis by looking at the language of § 1981 prior to the adoption of the 1991 Civil Rights Act:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject

> to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981 (1990). The court then noted that in *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), the Supreme Court had interpreted § 1981 to protect just two rights:

> the right to make contracts, which "extend[ed] only to the formation of a contract, but not to problems that may arise later from the conditions of continuing employment," and the right to enforce contracts, which "embrace[d] protection of a legal process, and of a right of access to legal process, that will address and resolve contract-law claims without regard to race."

R.244 at 4 (quoting *Patterson*, 491 U.S. at 176-77). Consequently, after *Patterson* was handed down, § 1981 had a very limited scope that did not include claims for discriminatory termination or hostile work environment.

As part of the Civil Rights Act of 1991, the district court noted, Congress amended § 1981 to define " 'make and enforce contracts' to include 'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.' " *Id.* (quoting 42 U.S.C. § 1981(b)). Under this language, aggrieved employees could pursue claims of discrimination based upon events that occurred during the course of their employment.

After reviewing this evolution of § 1981, the district court turned to the question of the appropriate statute of limitations for claims brought under § 1981. The court acknowledged that courts considering claims under § 1981 historically have applied the personal injury statute of limitations of the forum state. *See id.* However, the court believed that "this well-settled proposition was al-

tered by Congress' enactment on December 1, 1990 of 28 U.S.C. § 1658, the federal 'catch-all' statute of limitations." *Id.* Section 1658 provides in relevant part: "Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658(a).[4] Noting that § 1658 applies to any "civil action arising under an Act of Congress enacted" after December 1, 1990, the district court took the view that "An Act of Congress enacted" was not "susceptible to more than one reasonable interpretation." R.244 at 8 (internal quotation marks omitted).

> "Enact" means "to make into law by authoritative act," Black's Law Dictionary 546 (7th ed. 1999); thus every Act of Congress, whether it reflects a never-before

---

[4] Until July 30, 2002, § 1658 only consisted of the quoted language. However, on that date, Congress amended § 1658 by designating the quoted language as subsection (a) and adding subsection (b) which provides:

> Notwithstanding subsection (a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of—
>
> > (1) 2 years after the discovery of the facts constituting the violation; or
> >
> > (2) 5 years after such violation.

Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204 § 804(a), 116 Stat. 745, 801 (2002). Nothing in the amendment affects the language of now subsection (a) or the analysis of that subsection contained in this opinion.

considered subject or amends a previously existing statute, is "enacted." To the extent there could ever be any doubt about whether the Civil Rights Act of 1991 was "an Act of Congress" or whether it was "enacted," the language of the law itself should set the record straight.

*Id.* (internal citations omitted). The court went on to note that the preamble to the Civil Rights Act of 1991 both defines it as "An *Act* to amend the Civil Rights Act of 1964 . . ." and also begins with "Be it *enacted* . . . ." *Id.* (emphasis in original and internal quotation marks omitted). The court also found it unambiguous that "arising under" meant "stemming from" or "originating in." *Id.* (internal quotation marks and citations omitted). The court concluded that the meaning of § 1658 was that "whenever Congress, after December 1990, passes legislation that creates a new cause of action, the catch-all statute of limitations applies to that cause of action." *Id.*

The court then applied its interpretation of § 1658 to the facts presented. The court stated that § 1981 claims allowed by *Patterson* "clearly arise under an Act of Congress that was enacted prior to § 1658's enactment date, and the catch-all statute does not apply to such claims." *Id.* at 8-9. However, "[c]laims that *Patterson* said could not be brought under the pre-1991 version of § 1981, but which can be made only by virtue of § 1981(b), just as clearly arise under the Civil Rights Act of 1991, an Act of Congress enacted after § 1658." *Id.* at 9. Therefore, the district court concluded that § 1658 applies to that latter class of claims.

The court acknowledged that its decision was contrary to the only court of appeals decision to address the issue, *see Zubi v. AT&T Corp.*, 219 F.3d 220, 225 (3d Cir. 2000), as well as the majority of the district courts. Quoting

the Third Circuit, the district court read *Zubi* as based on the rationale that Congress, in enacting the 1991 legislation, had chosen "to build upon a statutory text that has existed since 1870," and therefore "Zubi's civil action arises under an Act of Congress enacted before December 1, 1990, and is governed by New Jersey's two-year statute of limitations." R.244 at 5 (quoting *Zubi,* 219 F.3d at 225-26). The district court could not "imagine how this [was] possible," because "in *Patterson,* the United States Supreme Court clearly held that claims such as those asserted by *Zubi* (discriminatory firing) *did not* arise under the pre-1991 version of § 1981." R.244 at 5.

The district court then summarized its holding:

> [T]he Court finds that 28 U.S.C. § 1658 is unambiguous and, by its terms, applies to all claims arising out of the Civil Rights Act of 1991, which was enacted after December 1, 1990, the date on which § 1658 was enacted. Section 1658, by its terms, does not apply to claims arising under the pre-1991 version of § 1981; these claims continue to be governed by the most analogous state law statute of limitations, here, Illinois' two-year personal injury statute of limitations.
>
> So what does this mean for the parties in this case? It is clear that claims asserted by Class 1 (the wrongful termination/failure to transfer claims) and Class 3 (the hostile work environment claims) arise under the 1991 Act, and are therefore governed by § 1658's four-year statute of limitations. . . .

*Id.* at 10-11 (internal citations omitted).

### C.

After the district court issued its memorandum opinion, Donnelley requested that the court certify the issue of

the appropriate statute of limitations for immediate review. Determining that the criteria for an immediate appeal pursuant to 28 U.S.C. § 1292(b) had been met, the district court granted the defendant's motion to certify the following question:

> [W]hether in a 1996 lawsuit brought under 42 U.S.C. § 1981 alleging race discrimination in termination of employment, and maintenance of a racially hostile work environment, the appropriate statute of limitations is the "catch-all" four-year period enacted by Congress in 1990 and codified at 28 U.S.C. § 1658, or the personal injury statute of limitations of the forum state.

R.248 at 2. By order of August 21, 2001, this court allowed Donnelley to pursue its appeal.

## II

### DISCUSSION

To determine the appropriate statute of limitations, we must interpret two federal statutes; accordingly, we review the district court's interpretation de novo. *See, e.g., Zambrano v. Reinert*, 291 F.3d 964, 968 (7th Cir. 2002) (reviewing question of statutory and constitutional interpretations de novo); *see also Zubi*, 219 F.3d at 221 (reviewing de novo the question of the appropriate statute of limitations for § 1981 actions after the enactment of § 1658).

Prior to the enactment of § 1658, it was clear that the proper statute of limitations for § 1981 actions was the forum state's statute of limitations for personal injuries. *See Smith v. City of Chicago Heights*, 951 F.2d 834, 837 n.1 (7th Cir. 1992) (citing *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660-64 (1987)). The plaintiffs maintain, however, that three intervening judicial and legislative events have oc-

curred that alter the existing rule. First, the Supreme Court held in *Patterson v. McLean Credit Union*, 491 U.S. 164, 176-77 (1989), that § 1981 only granted two discrete rights: the right to make contracts, which "extends only to the formation of a contract, but not to problems that may arise later from conditions of continuing employment," and the right to enforce contracts, which "embraces protection of a legal process, and of a right of access to legal process, that will address and resolve contract-law claims without regard to race." *Id.* at 176-77. Second, in 1990, Congress enacted a uniform catch-all statute of limitations that provided a four-year statute of limitations for "civil action[s] arising under an Act of Congress" enacted after the effective date and for which a specific statute of limitations was not provided. Third, Congress amended § 1981 by way of the Civil Rights Act of 1991; specifically, it redefined "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Because their actions "aris[e] under" the 1991 Civil Rights Act, § 1658 provides the applicable statute of limitations.

In reply, Donnelley submits that Congress intended § 1658 to apply only to wholly new causes of action and not those built upon existing statutory schemes. According to Donnelley, "[n]either the statutory language of § 1658 nor this Court's jurisprudence on statutory interpretation sanctions" the plaintiffs' reading of § 1658. Appellant's Br. at 6. We shall consider these arguments below.

As with any statutory interpretation question, determination of the meaning and application of § 1658 to the § 1981 claims at issue must begin with the statutory language of both provisions. *See Masters v. Hesston Corp.*, 291 F.3d 985, 989 (7th Cir. 2002) ("The interpretation of a stat-

ute is a question of law, which we review *de novo*."). Prior to the adoption of the Civil Rights Act of 1991, § 1981 stated:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981 (1990). Until the Supreme Court's decision in *Patterson*, courts generally interpreted § 1981 to encompass causes of action for race discrimination that occurred at any point during the employment relationship. *See, e.g., Hunter v. Allis-Chalmers Corp., Engine Div.*, 797 F.2d 1417, 1430 (7th Cir. 1986) (upholding jury verdict of discriminatory treatment and termination under § 1981). However, the Supreme Court in *Patterson* held that § 1981 should be interpreted more narrowly:

> [T]he conduct which petitioner labels as actionable racial harassment is postformation conduct by the employer relating to the terms and conditions of continuing employment. . . .
>
> This type of conduct, reprehensible though it be if true, is not actionable under § 1981, which covers only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process.

*Patterson*, 491 U.S. at 179.

As part of the Civil Rights Act of 1991, Congress enacted an amendment to § 1981 that "reversed" the *Patterson*

decision. Specifically, Congress added a subsection to § 1981 that defined "make and enforce contracts" broadly; the current version of § 1981 states:

§ 1981.  Equal rights under the law

(a)  Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

*(b)  "Make and enforce contracts" defined*

*For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.*

(c)  Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981 (emphasis added). Consequently, under the amended § 1981, an employee may bring a cause of action against his employer for discriminatory conduct that occurs after the employment relationship is formed.

Section 1981 does not contain its own statute of limitations. Consequently, prior to § 1981's amendment in 1991, courts applied the most analogous state statute of limitations to actions brought under that section. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987) ("Be-

cause § 1981 . . . does not contain a statute of limitations, federal courts should select the most appropriate or analogous state statute of limitations."). For actions brought in Illinois, this court has determined that Illinois' two-year statute for personal injury claims is most analogous. *See, e.g., Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 807 (7th Cir. 1999), *cert. denied*, 530 U.S. 1204 (2000) (applying Illinois' two-year statute of limitations for personal injury claims to a cause of action brought pursuant to § 1981).

The plaintiffs maintain that, at least with respect to § 1981 actions that were barred by the *Patterson* decision, 28 U.S.C. § 1658 now provides the applicable statute of limitations. We look therefore to the language of § 1658 to determine if it applies to any claims brought under § 1981. Section 1658 provides in relevant part: "Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658(a).

Certainly, the plaintiffs' claims are "civil action[s]." The central question therefore is whether their claims "arise under an Act of Congress enacted after the date of the enactment of this section." The district court equated "arising under" with " 'stemming from' or 'originating in.' " R.244 at 8 (quoting Black's Law Dictionary 102 (7th ed. 1999)). In the district court's view, claims prohibited by *Patterson*, "but which can be made only by virtue of § 1981(b), . . . clearly arise under the Civil Rights Act of 1991. . . ." *Id.* In essence, the district court believed that the plaintiffs' claims "aris[e] under" the 1991 Civil Rights Act because, by virtue of *Patterson*, those claims could not have been brought prior to the passage of the 1991 Act.

We respectfully disagree, however, that the plain language of § 1658, standing alone, compels the conclusion that § 1658 must apply to every statute subject to any amendatory action by Congress. The language of § 1658 addresses only a "civil action" that "aris[es] under" an act adopted after § 1658's effective date. The language simply does address the eventuality when a cause of action "aris[es] under" two different "Acts," one enacted before and one enacted after the effective date of § 1658. Consequently, we must look not only at the language of § 1658 and § 1981, but also the structure and history of those statutes to determine whether § 1658 provides the applicable statute of limitations for the plaintiffs' claims. *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 326-27 (7th Cir. 1995) (stating that a court may look beyond the text of a statute where the language is ambiguous, where a literal interpretation would lead to "absurd results" or where a literal interpretation would "thwart the goals of the statutory scheme").

At the outset of our inquiry, we remain focused on the language and structure of § 1658. By its terms, § 1658 applies to civil actions "arising under an Act of Congress *enacted* after the date of the enactment of this section . . . ." 28 U.S.C. § 1658 (emphasis added). As noted by one of our sister circuits, "[t]he phrase 'an Act of Congress enacted' after 1990 is not equivalent to the phrase 'an Act of Congress enacted or amended' after that year." *Madison v. IBP, Inc.*, 257 F.3d 780, 798 (8th Cir. 2001), *vacated on other grounds*, 122 S. Ct. 2583 (2002).[5] "Amendments

---

[5] In *Madison v. IBP, Inc.*, 257 F.3d 780, 798 (8th Cir. 2001), *vacated on other grounds*, 122 S. Ct. 2583 (2002), the plaintiffs had brought Title VII claims as well as § 1981 claims. With respect to the plaintiffs' Title VII claims, the Eighth Circuit ruled that

(continued...)

vary in their purpose, and the line between an amend-
ment that modifies an existing right and one that creates
a new right is often difficult to draw." *Zubi v. AT&T Corp.*,
219 F.3d 220, 224 (3d Cir. 2000). The difficulty in discern-
ing a technical from a substantive amendment, or an
amendment that modifies an existing civil action from
one that creates a wholly new one, has led two of our
sister circuits to reject a reading of § 1658 that would call
for such guess work. According to the Eighth Circuit,
"when Congress amends a preexisting statute, it does not
create a 'new act,' and claims arising under the statute
as amended continue to arise under the preexisting stat-

---

[5]  (...continued)
> [b]ecause Title VII has a 300 day limitations period, the
> district court should have instructed the jury that Madison
> could only recover damages under Title VII for illegal acts
> occurring within the 300 day period prior to the filing of
> her administrative charge. Since Madison filed her charge
> on January 13, 1995, she was entitled to recover damages
> under Title VII only for acts of discrimination or harass-
> ment occurring after March 19, 1994. The court therefore
> erred in instructing the jury that she could recover punitive
> damages under Title VII for illegal acts occurring after
> January 13, 1993.

*Id.* at 797. However, in *National Railroad Passenger Corp. v. Morgan*,
122 S. Ct. 2061, 2077 (2002), the Supreme Court held that "[a]
charge alleging a hostile work environment claim . . . will not
be time barred so long as all acts which constitute the claim
are part of the same unlawful employment practice and at
least one act falls within the time period." It was in light of its
decision in *Morgan* that the Supreme Court vacated the deci-
sion of the Eighth Circuit in *IBP. See Madison v. IBP, Inc.*, 122 S. Ct.
2583 (2002). The Supreme Court did not pass judgment on,
or otherwise call into question, the Eighth Circuit's reasoning
with respect to the § 1981 claim.

ute. It is, thus, only when Congress establishes a new cause of action without reference to preexisting law that § 1658 applies." *Id.* at 225.

The purpose behind § 1658 confirms the significance of the distinction drawn by the Eighth Circuit. In enacting this section, Congress sought to alleviate the uncertainty inherent in the practice of borrowing analogous state statutes of limitations for federal causes of action that do not contain their own limitations periods:

> At present, the federal courts "borrow" the most analogous state or federal law limitations period for federal claims lacking limitations periods. This practice creates a number of practical problems. As pointed out by the Study Committee:

>> It obligates judges and lawyers to determine the most analogous state law claim; it imposes uncertainty on litigants; reliance on varying state laws results in undesirable variance among the federal courts and disrupts the development of federal doctrine on the suspension of limitations periods.

H.R. Rep. No. 101-734, at 24. Notably, Congress also was concerned with disrupting litigants' settled expectations and therefore made § 1658 prospective. This concern is reflected in the House Report as well:

> Section 111 addresses this problem by creating a four-year fallback statute of limitations, applicable to legislation enacted after the effective date of this Act, which creates a cause of action but is silent as to the applicable limitations period.

> Witnesses testifying on behalf of the Department of Justice and the Judicial Conference, urged that this

> section be made retrospective, so as to provide a
> fallback statute of limitations for previously enacted
> legislation lacking a limitations period. As witness
> George Freeman noted at the hearing, however, with
> respect to many statutes that have no explicit limita-
> tions provision, the relevant limitations period has
> long since been resolved by judicial decision, with
> the applicable period decided upon by the courts
> varying dramatically from statute to statute. Under
> these circumstances, retroactively imposing a four
> year statute of limitations on legislation that the
> courts have previously ruled is subject to a six month
> limitations period in one statute, and a ten year
> period in another, would threaten to disrupt the
> settled expectations of a great many parties. Given
> that settling the expectations of prospective parties is
> an essential purpose of statutes of limitation, the Com-
> mittee was reluctant to apply this section retroactively
> without further study to ensure that the benefits of
> retroactive application would indeed outweigh the
> costs.

*Id.* We believe that Donnelley's proposed interpretation
of § 1658 is most compatible with this interest in cer-
tainty and in honoring settled expectations. Under this
approach, plaintiffs do not have to guess whether their
action arose under the original enactment or its amend-
ment. Section 1658, therefore, applies only when an act
of Congress creates a wholly new cause of action, one
that does not depend on the continued existence of a
statutory cause of action previously enacted and kept in
force by the amendment.

The plaintiffs maintain that their proposed interpreta-
tion of § 1658 provides certainty and, at the same time,
does not disrupt litigants' expectations. According to the
plaintiffs, because the type of claims on which they

seek relief did not exist post-*Patterson* and pre-§ 1981(b), there are no settled expectations to disrupt with respect to the statute of limitations to apply to such claims. "At first blush," the plaintiffs' interpretation does appear "to promise a fair degree of certainty in application"; if the newly enacted statute created a cause of action that did not exist previously, then § 1658 applies. *Zubi,* 219 F.3d at 224. "But that promise," as the Third Circuit has explained, "upon reflection, seems to us illusory." *Id.*

> First, as we have pointed out, [this] interpretation results in different statutes of limitations being applied to plaintiffs suing under the same statute depending on the particular facts of their claims. Thus, for example, plaintiffs who invoke § 1981 because they have been victims of discrimination in hiring will have their claims governed by one statute of limitations, while plaintiffs who invoke the same statute because they are victims of a discriminatory discharge will have their claims governed by another. Adoption of such an interpretation would seem to us to generate exactly the kind of confusion and unfairness that Congress sought to avoid.

> Recognition of two classes of plaintiffs under § 1981, when applied in a state with a statute of limitations for § 1981 claims larger than four years, is likely to result in unsuspecting plaintiffs who have relied on established precedent finding themselves barred from relief. Conversely, recognizing two classes, when applied in a state with a statute for § 1981 claims shorter than four years, is likely to result in defendants finding themselves faced with potential liability on claims they believed extinguished.

*Id.*

We believe that the Third Circuit's interpretation is most consonant with the purpose of § 1658 and the balance struck by Congress between the need for uniformity and the need to preserve settled expectations. Under this formulation,

> [w]hen an Act of Congress passed after December 1, 1990, amends a statute existing before that date, as opposed to creating a new law without reference to previously existing statutory language, all claims accruing after the passage of the amendment arise under an Act of Congress enacted before December 1, 1990, without regard to whether an identical claim arising earlier could have been successfully pursued under the prior statute.

*Zubi*, 219 F.3d at 222. Thus, it is "only when Congress establishes a new cause of action without reference to preexisting law that § 1658 applies." *Id.* at 225.

We now turn to the language, structure and history of § 1981 to determine whether, given the manifest intent of Congress in enacting § 1658, it is appropriate to apply the applicable state statute of limitations or the federal catch-all provision. We again begin with the language and the structure of the statute. The most salient feature of the revised statute is that § 1981(b) simply cannot stand on its own. An action to recover for discriminatory post-formation treatment simply cannot be based solely on § 1981(b). Indeed, without § 1981(a), § 1981(b) is meaningless. Consequently, although post-formation discriminatory claims depend on the amendatory language of § 1981(b) in the sense that the definitional language of that subsection makes clear that "make and enforce" includes post-formation conduct, the cause of action for post-formation conduct "aris[es] under" § 1981(a); that

subsection, not subsection (b), provides the actual right to recovery.

That this structural formation of the revised § 1981 is no accident is clear when we turn to the history of the amendment. There is no question that reversing the *Patterson* decision was the driving force behind the enactment of § 1981(b). *See* H.R. Rep. No. 102-40 (I), at 88-92 (1991) (explaining the need to overrule *Patterson* and that the act "would overrule *Patterson* by adding at the conclusion of section 1981 a new subsection (b)"). Notably, Congress chose to overrule *Patterson* not by creating an entirely new statutory provision. Indeed, Congress did not alter the original language of § 1981 (now § 1981(a)), which provides the basic right of recovery for an individual whose constitutional rights have been violated; instead, Congress merely supplied a more precise definition to one of the rights already guaranteed by § 1981— the right "to make and enforce contracts." Congress could have overruled *Patterson* in a number of ways. Instead of creating a wholly new cause of action, Congress merely defined the term "make and enforce contracts" for the purpose of the old § 1981, now § 1981(a). Congress' action therefore evinces a desire to tie the new cause of action to the existing § 1981.

Moreover, it is highly significant that, when Congress passed the Civil Rights Act of 1991 with the amendments to § 1981 contained therein, it believed that the applicable state statute of limitations for personal injury claims would continue to apply to § 1981 claims:

> But under 42 U.S.C. section 1981, which bars intentional race discrimination in employment as well as other contractual relations, victims have a longer period of time to commence suits. In the absence of an express limitations period in section 1981, courts

> applying the statute have looked to analogous state statutes of limitations. These statutes typically allow two or three years, and allow up to six years in some states.

H.R. Rep. No. 102-40 (I), at 63 (1991). Consequently, although Congress had enacted § 1658 the year before, it did not view its passage as having altered the practice of borrowing state statutes of limitations for purposes of § 1981.

Finally, we also are persuaded by the considered opinions of two of our sister circuits that adopted the approach set forth here. In *Zubi* and *IBP*, the Third and Eighth Circuits both concluded that § 1658 did not affect the statute of limitations for § 1981 claims such as those brought by the plaintiffs. Those courts determined that it is "only when Congress establishes a new cause of action without reference to preexisting law that § 1658 applies." *Zubi*, 219 F.3d at 225; *IBP*, 257 F.3d at 798 (quoting same). Because "the Civil Rights Act of 1991 was not the type of enactment Congress intended to include in the § 1658 four year limitations period," those courts applied the personal injury statute of the forum state. *IBP*, 257 F.3d at 798. We join those circuits in determining that § 1658 does not provide the applicable statute of limitations for claims of discrimination based on actions occurring after the employment relationship is formed.[6]

---

[6] For the reasons set forth in this opinion, we respectfully disagree with the decision of the Tenth Circuit in *Harris v. Allstate Insurance Co.*, 2002 WL 1874825 (10th Cir. Aug. 15, 2002). In *Harris*, the Tenth Circuit drew heavily from the analysis of the district court in the present case and also of the dissenting judge in *Zubi*. Specifically, relying on the district court's reason-

(continued...)

Instead, the statute of limitations for those claims, as for all § 1981 claims, remains the most analogous statute of limitations, here Illinois' two-year statute of limitations for personal injuries.

## Conclusion

28 U.S.C. § 1658, as it applies to claims brought pursuant to § 1981, is susceptible to more than one textually plausible reading. Based on the text, the structure of the statutes and the legislative history of those sections, we conclude that § 1658 does not apply to the plaintiffs' claims brought pursuant to § 1981. Consequently, the judgment of the district court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion. Donnelley may recover its costs on this appeal.

REVERSED AND REMANDED

---

[6] (...continued)
ing that the Civil Rights Act of 1991 was an "Act of Congress enacted" after December 1, 1990, the Tenth Circuit held that "§ 1658 applies to claims brought under § 1981(b), but not to claims brought under § 1981(a)." *Id.* at *6-9. As noted above, however, we do not believe the plaintiffs' claims "arise under" only § 1981(b), and, therefore, courts must look to the text, structure and purpose of both § 1981 and § 1658 to determine the correct statute of limitations. When this more complete context is considered, we believe that the correct statute of limitations for all § 1981 actions is the closest analogous state statute of limitations.

No. 01-3271                                                    23

A true Copy:

    Teste:


                            _____

                            *Clerk of the United States Court of*
                                *Appeals for the Seventh Circuit*