Earl J. THOMPSON, Plaintiffs,

v.

CITY OF SHASTA LAKE,
et al., Defendants.

No. Civ. S–03–2513 LKK/KJ.

United States District Court,
E.D. California.

April 27, 2004.

Richard Price, Charter Davis, Sacramento, CA, for plaintiff.

William Ayres, Kenneth Arthofer, Harr, Arthofer & Hayes, Redding, CA, for defendants.

## ORDER

KARLTON, Senior District Judge.

Plaintiff, Earl J. Thompson, filed this action against the City of Shasta Lake ("City") and various city officials [1] pursuant to 42 U.S.C. § 1983, alleging that they violated his rights protected by the Fifth and Fourteenth Amendments to the United States Constitution. The matter is before the court on defendants' motion to dismiss, *see* Fed.R.Civ.P. 12(b)(6), and, in the alternative, for a more definite statement. *See* Fed.R.Civ.P. 12(e). I decide the motions on the papers filed herein and after oral argument.[2]

## I.

## GENERAL ALLEGATIONS

Plaintiff is a partner of Mid–State Properties, a housing development company. Compl. at 2. He asserts that the defen-

dants engaged in a pattern of behavior designed to harass him and interfere with his projects in the City of Shasta Lake.

According to plaintiff, the harassment began in August of 2001, when, while working on a construction project, defendant Thompson, the City's Planning Director, and defendant Wood, a Code Enforcement employee, fined plaintiff $4,000 for cutting down several trees in violation of a City ordinance. They also suspended his building permits. *Id.* After appealing the violation to both the Planning Commission and the City Council, the fine was dismissed on the grounds that the plaintiff had previously obtained permission from the City to cut the trees. *Id.* at 3.

During January of 2002, soon after the plaintiff closed on the purchase of property he planned to develop, the City placed a lien on it, assertedly to secure payment for "deferred improvements." *Id.* The plaintiff challenged the lien in small claims court and obtained a judgment removing the lien. *Id.*

Later that year, plaintiff's housing project, known as "Sophia," was interrupted when defendant Marovec, a former City Intern, issued a stop order on the project. *Id.* The stop order concerned whether a two-foot retaining wall was included in the city-approved project plans. *Id.* The City thereafter twice rejected plaintiff's revised retaining wall plans. According to plaintiff's licensed engineer, no revisions were necessary. *Id.* Further, the City contacted plaintiff's contractor and threatened his license unless he withdrew from the project; the contractor did withdraw and plaintiff was forced to hire a new contractor. *Id.* After experiencing these delays,

---

**1.** The defendants include Reed Boilon, Carla Thompson, Jeff Wood, and Gary Moravec, in their individual and official capacities, and Does 1–25.

**2.** Plaintiff filed an Amended Complaint on April 7, 2004. Because plaintiff failed to comply with the requirements of Fed.R.Civ.P. 15(a), the Amended Complaint will be stricken.

the City approved the original plans for the two-foot wall, without any changes. *Id.*

During July of 2003,[3] the plaintiff began developing lots for a modular homes project. The City once again intervened, citing a new effort to upgrade the provision of water to the new neighborhood. *Id.* at 3–4. As part of the upgrade project, the City required plaintiff to install a new water line and fire hydrant prior to any development. *Id.* at 4. The project came to a halt, since, according to plaintiff, the cost of meeting the City's new requirement would have exceeded the cost of the lots receiving the water service. *Id.*

In preparing for the development, the plaintiff had purchased two modular homes from out-of-state for shipment to the lots. *Id.* at 3. After the project was suspended, plaintiff was forced to store the homes elsewhere. *Id.* at 4. Subsequently, the City began to issue daily violation notices to Mid–State for improper storage of the modular homes. *Id.*

On July 24, 2002, defendant Wood and Marovec approached plaintiff at the Sophia project to serve him with a daily violation. *Id.* Later that afternoon, County Deputy Sheriff, Wes Collete, appeared at the project site and questioned plaintiff regarding a threat he allegedly made to a city public official. *Id.* at 5. After plaintiff denied the accusation, the Deputy questioned three construction workers, all of whom said that they did not hear or witness any altercation while the city officials were on the construction site earlier that day. *Id.* Based on the accusations made by the City employees, the plaintiff obtained a temporary restraining order (TRO) barring de-

fendant Wood from contacting him. *Id.* at 5.[4] Later that day, defendant Boilon appeared at the site with the daily violation. *Id.* Plaintiff signed the violation after being threatened with arrest if he failed to do so. *Id.*

The next day, Deputy Collete again appeared at the Sophia project site and arrested plaintiff for threatening a public official, a felony. Plaintiff was jailed with bail set at $100,000. *Id.* In August of 2003, shortly before trial was scheduled, the case was dismissed after the District Attorney admitted there was no basis for the charges. *Id.* at 5–6.

The plaintiff alleges that defendants continued to harass him. *Id.* According to plaintiff, the "Sophia" properties have twice "fallen out of escrow", due to the City's insistence on purposeless engineered drawings, stop work orders, and a host of other impediments to completion. *Id.*

## II.

### STANDARDS

### A. DISMISSAL STANDARDS UNDER FED. R. CIV. P. 12(b)(6)

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL–CIO v. Schermerhorn*, 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963). Thus,

---

**3.** The complaint alleges the relevant time as July 2003. From the chronology of the events, it appears this is a typographical error, and that the alleged events occurred in 2002. Nonetheless, the court is not free to

rewrite plaintiff's complaint and thus will address the allegation as pled.

**4.** Plaintiff requested that Deputy Collete serve the TRO on Wood, but he refused to do so. *Id.*

the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. *See id.; see also Wheeldin v. Wheeler,* 373 U.S. 647, 648, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963) (inferring fact from allegations of complaint).

In general, the complaint is construed favorably to the pleader. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). So construed, the court may not dismiss the complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In spite of the deference the court is bound to pay to the plaintiff's allegations, however, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

**B. DISMISSAL STANDARDS UNDER FED. R. CIV. P. 12(e)**

■■■■ "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed.R.Civ.P. 12(e). "The situations in which a Rule 12(e) motion is appropriate are very limited." 5A Charles A. Wright & Arthur R. Miller,

Federal Practice and Procedure § 1377 (1990). Furthermore, absent special circumstances, a Rule 12(e) motion cannot be used to require the pleader to set forth "the statutory or constitutional basis for his claim, only the facts underlying it." *McCalden v. California Library Ass'n,* 955 F.2d 1214, 1223 (9th Cir.1990). However, "even though a complaint is not defective for failure to designate the statute or other provision of law violated, the judge may in his discretion ... require such detail as may be appropriate in the particular case." *McHenry v. Renne,* 84 F.3d 1172, 1179 (9th Cir.1996).

**III.**

**ANALYSIS**

**A. FAILURE TO STATE A CLAIM**

The defendants contend that all of plaintiff's claims are barred by an applicable one-year statute of limitations. Plaintiff argues that his claims, arising under § 1983, are governed by the four-year statute of limitations provided by 28 U.S.C. § 1658. For the reasons explained below, I conclude that the problem is both complex and subtle, and that neither the plaintiff nor the defendant is completely correct.

Congress has provided for a four-year federal "catch-all" statute of limitations for claims arising under any statute enacted after 1990 that does not contain a statute of limitations. *See* 28 U.S.C. § 1658(a).[5] Section 1983 does not contain its own statute of limitations; it was, however, originally enacted prior to December 1, 1990. Nonetheless, it does not follow that § 1658(a) is inapplicable.

---

**5.** The statute provides:

"A civil action arising under an Act of Congress enacted after the date of the enact-

ment of this section [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues."

■ It is generally agreed that preexisting statutes, amended by Congress after 1990, may be subject to the four-year statute of limitations. *Zubi v. AT&T Corp.*, 219 F.3d 220 (3d Cir.2000); *Madison v. IBP*, 257 F.3d 780 (8th Cir.2001); *Jones v. R.R. Donnelley & Sons Co.*, 305 F.3d 717 (7th Cir.2002). The applicability of the catchall statute turns on whether the amendment essentially continues the preexisting statute, or so fundamentally alters the statute as to, in effect, create a new cause of action. *Id.*

■ Section 1983 of Title 42 was amended on October 19, 1996, to limit injunctive relief against judicial officers. *See* Federal Courts Improvement Act of 1996, Pub.L. 104–317, Title III, § 309(c), 100 Stat. 3853. That amendment, however, merely limits relief against a specified group of defendants, not relevant to the instant litigation, and does not fundamentally alter the statute or create a new cause of action. For that reason, I conclude, § 1983 incorporates the applicable statute of limitations of the state in which the cause of action arose. As it turns out, however, recent events make the identification of the applicable statute less than pellucid.

Relying on *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Ninth Circuit has repeatedly held that the applicable limitations period for § 1983 actions is contained in the general personal injury statute. *See, e.g., McDougal v. County of Imperial*, 942 F.2d 668, 672 (9th Cir.1991) ("because § 1983 actions are best characterized as actions for injuries to personal rights, courts should borrow the state statute of limitations that applies to personal injury actions.") (internal citation omitted). Until recently, Cal.Civ.Proc. Code § 340(3) governed the statute of limitations for personal injury cases in California. The statute established a one-year statute of limitations for actions "for libel, assault, battery, false imprisonment, seduction of a person below the age of legal consent, or for injury to or for death of one caused by the wrongful act or neglect of another...." Cal.Civ.Proc.Code § 340(3) (West 1982).

The problem relative to the applicable statute of limitations, however, has been made less certain by virtue of an amendment of § 340(3) in 2002, effective in January 1, 2003. *See* Cal. Senate Bill 688 (Burton), State 2002, ch. 448, §§ 2, 3. Senate Bill 688 changed the statute of limitations period for personal injury torts. *Id.* Pursuant to the amendment, California now provides for a specific one-year statute for false imprisonment, *see* Cal.Civ. Proc.Code. § 340(c),[6] and a two-year statute for other personal injury torts, *see* Cal.Civ.Proc.Code. § 335.1 [7].

Plaintiff alleges essentially two causes of action: one, a Fourth Amendment claim predicated on the alleged wrongful arrest and imprisonment, and two, a Fourteenth Amendment claim for a denial of equal protection. I now examine what statute of limitations applies to each of plaintiff's claims.

■ The Supreme Court has addressed the question of which state statute applies when a state has multiple statutes of limitations applicable to personal inju-

---

**6.** Cal.Civ.Proc.Code § 340(c) provides, in relevant part:

"Within one year: An action for libel, slander, false imprisonment, seduction of a person below the age of legal consent...." (West Supp.2003).

**7.** Cal.Civ.Proc.Code § 335.1 provides, in relevant part:

"Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another." (West Supp.2003).

ry/tort actions. The Court held that "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Owens v. Okure,* 488 U.S. 235, 249–50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). Since January 1, 2003, California's residual statute of limitations for personal injury actions has been Cal.Civ.Proc.Code § 335.1, "since [that] section contains an express 'catchall' provision, covering any 'injury to or ... death of one caused by the wrongful act or neglect of another.'" *McDougal,* 942 F.2d at 672 (internal citations omitted). Therefore, although the statutory period for false arrest and imprisonment claims is specifically provided for in § 340(c), they, as well as the equal protection claims, are governed by the new, two-year residual period.

The court's inquiry concerning the statute of limitations applicable to plaintiff's claims does not end here, however. The next question is whether the new two-year statutory period applies retroactively to plaintiff's pre–2003 claims, or whether those claims are still governed by the former one-year personal injury statute of limitations. Fortunately, the California Supreme Court has conclusively resolved this issue.

■■■■ Unless otherwise expressly excepted, a new statute which enlarges a statutory limitations period applies to matters that are not already barred by the original period at the time the new statute goes into effect. *Mudd v. McColgan,* 30 Cal.2d 463, 468, 183 P.2d 10 (1947); *Douglas Aircraft Co. v. Cranston,* 58 Cal.2d 462, 465, 24 Cal.Rptr. 851, 374 P.2d 819 (1962). Such application to pending matters "is

prospective[,] rather than retrospective," therefore, "there is no impairment of vested rights." *Mudd,* 30 Cal.2d at 468, 183 P.2d 10. The new statutory period may be applied retroactively, reviving matters already barred, only if the legislature clearly stated such an intent. *See Douglas Aircraft,* 58 Cal.2d at 466, 24 Cal.Rptr. 851, 374 P.2d 819 (amendment enlarging the statute of limitations did not apply retroactively where the statute did not expressly so provide, but applied "only to claims on which the statute of limitations had not run on the effective date of the act."); *Moore v. State Bd. of Control,* 112 Cal. App.4th 371, 378–379, 5 Cal.Rptr.3d 116 (2003) (holding that where the application of a new or amended statute of limitations would effectively revive an already time-barred claim, retroactivity is prohibited in the absence of a clear legislative intent to the contrary.). The state Supreme Court explained that "[t]hese rules afford warning to potential defendants that until the statute of limitations has run it may be extended, whereas after it has run, they may rely upon it in conducting their affairs." *Douglas Aircraft,* 58 Cal.2d at 465, 24 Cal.Rptr. 851, 374 P.2d 819.

■■■■ Section 335.1 does not expressly provide that it applies retroactively to claims already time-barred under former § 340(3).[8] Neither does it expressly state that it does not apply to matters still pending at the time it went into effect. Under *Mudd* then, the two-year limitations period will apply to plaintiff's claims that were not already time-barred on January 1, 2003. The determination of whether the claims were time-barred under the former one-year limitations period, also depends, however, on when the claims began to accrue.

---

**8.** The legislature carved out an exception for one class of plaintiffs when it created § 340.10. That section provides that the two-year statute of limitations set forth in Section 335.1 shall apply to any action brought for injury to or death of any victim of the terrorist events of September 11, 2001. *See* Cal.Civ. Proc.Code. § 340.10.

With the foregoing determinations and frame of analysis, I next examine each of plaintiff's claims separately to determine their timeliness.

### 1. Fourth Amendment

The plaintiff claims that his constitutional rights were violated when he was arrested and jailed on July 25, 2003. Compl. at 5; Pl's Oppo. to Mot. to Dismiss at 1. "[A]n arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983." *Lee v. City of Los Angeles,* 250 F.3d 668 (9th Cir.2001) (*quoting Borunda v. Richmond,* 885 F.2d 1384, 1391 (9th Cir.1988)).

▮▮▮ Although state law provides the statute of limitations, federal law determines when a civil rights claim accrues. *Morales v. City of Los Angeles,* 214 F.3d 1151, 1154 (9th Cir.2000)(*citing TwoRivers v. Lewis,* 174 F.3d 987, 991 (9th Cir.1999)). Under federal law, a cause of action generally accrues when the plaintiff "knows or has reason to know of the injury which is the basis of the action." *Trotter v. Int'l Longshoremen's & Warehousemen's Union Local 13,* 704 F.2d 1141, 1143 (9th Cir.1983). That general rule is not controlling here, however, where criminal charges connected with incidents forming the basis of a § 1983 action are pending. In this Circuit, as I explain below, the statute of limitations does not accrue until the criminal charges against the plaintiff seeking to bring the § 1983 action are resolved.

▮▮▮ It is established that, when a plaintiff has been convicted of a crime, a Fourth Amendment claim for false arrest and imprisonment begins to accrue when the conviction is overturned. *Cabrera v. City of Huntington Park,* 159 F.3d 374, 380 (9th Cir.1998). Applying the reasoning of *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994),[9] the *Cabrera* court found that if the plaintiff were allowed to bring his § 1983 claim before his conviction was overturned, a finding that there was "no probable cause [for his arrest] would 'necessarily imply' that [his] conviction ... was invalid." 159 F.3d at 380. The court therefore concluded that a § 1983 claim challenging an arrest does not begin to accrue until the plaintiff's conviction is overturned. More recently, the Ninth Circuit addressed whether *Heck* and *Cabrera* apply to cases where a plaintiff is not yet convicted, but faces a potential conviction. The Circuit answered that question in the affirmative. *Harvey v. Waldron,* 210 F.3d 1008 (9th Cir.2000).

First, the court noted that "[a] claim by a defendant in an ongoing criminal prosecution which necessarily challenges the legality of a future conviction on a pending criminal charge lies at the intersection of the federal habeas corpus statute and the Civil Rights Act of 1871." *Id.* at 1014. It then recognized that the holding of *Heck* seeks to avoid "the potential for inconsistent determinations on the legality [of] the civil and criminal cases" that may result in a collateral attack on the prosecution in a civil suit." *Id.* The Ninth Circuit determined that the potential for inconsistent determinations identified in *Heck* was equally present where the case was pending, since a successful § 1983 claim would necessarily undermine the validity of a future conviction. The court concluded that, because, "there is no difference between a conviction which is outstanding at the time the civil rights action is insti-

---

9. In *Heck v. Humphrey,* the Supreme Court held that a prisoner is barred from bringing a § 1983 suit to recover damages, when establishing the basis for the damages necessarily demonstrates the invalidity of the conviction, unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. 512 U.S. at 486–90, 114 S.Ct. 2364.

tuted and a potential conviction on a pending charge," the claim does not accrue until the criminal prosecution no longer exists. *Id.*

 Under *Harvey,* the former one-year statute of limitations did not begin to accrue as to plaintiff's false arrest and imprisonment claims until he no longer faced criminal charges. Under the allegations, the charge brought against him was not dismissed until August of 2003. Compl. at 5, 6. Accordingly, plaintiff had until August of 2004 to file his claims for false arrest and false imprisonment under the one-year limitations period. Moreover, because these claims were not yet barred on January 1, 2003, the new two-year limitations period applies, and the limitations period does not expire until August of 2005.

 While plaintiff's Fourth Amendment claims are timely, they are deficient in another regard. As noted, plaintiff was arrested by a County Deputy Sheriff and was prosecuted by the District Attorney, a county-wide official.[10] The pleadings, however, name only City officials, and plaintiff does not allege how they could be held liable for his arrest. Because it may be that plaintiff intends to assert that the city officials caused the arrest, plaintiff's false

imprisonment and false arrest claims will be dismissed, but leave to amend will be granted.

### 2. *Equal Protection Claim*[11]

 Plaintiff also claims that the City violated his right to equal protection when it selectively enforced city codes against him. I first examine whether his claim is timely. Because the *Heck* reasoning is inapplicable to plaintiff's claims premised on alleged selective enforcement, they accrued when he first knew or had reason to know of the injury that is the basis of his action. Plaintiff alleges instances of selective enforcement during August of 2001, January of 2002, July of 2003, and December of 2003. As I now explain, the statute of limitations runs separately from each of the discrete instances.

 Although the Supreme Court has held that in Title VII hostile work environment claims, the nature of the claim permits application of the "continuing violation" doctrine, *see National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)[12], the Circuit has held the doctrine inapplicable to cases where a plaintiff alleges he has been subjected to a pattern of hostile or harassing conduct by a municipality. *See*

---

**10.** It is well-established, however, that a district attorney

acts for the state when prosecuting a defendant. *See Pitts v. County of Kern,* 17 Cal.4th 340, 70 Cal.Rptr.2d 823, 949 P.2d 920 (1998); *Ceballos v. Garcetti,* 361 F.3d 1168, 1182–83 (9th Cir.2004).

**11.** Plaintiff's complaint alleges that defendants violated his rights under the Fifth Amendment. The Due Process Clause of the Fifth Amendment and the equal protection component thereof apply only to actions of the federal government, and not to those of state or local governments. *Lee v. City of Los Angeles,* 250 F.3d at 687 (9th Cir.2001)(*citing Schweiker v. Wilson,* 450 U.S. 221, 227, 101 S.Ct. 1074, 67 L.Ed.2d 186, (1981)). The

plaintiff does not allege that any of the defendants are federal actors. Those provisions are, however, incorporated against those acting under state law, through the Fourteenth Amendment. *See Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 160, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980). Thus, plaintiff may proceed with his equal protection claim.

**12.** The High Court has held that in Title VII hostile work environment claims, the entire period of the harassment may be considered actionable as one act, thus, a "continuing violation." The reason for this exception to the 'discrete acts rule' is that harassment, by definition, occurs over a series of events and time, in direct contrast to discrete acts.

*RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1061 (9th Cir.2002) (rejecting plaintiff's analogy of a hostile work environment claim to a claim where a municipality subjected plaintiff to a pattern of hostile or harassing conduct, concluding that the latter were discrete acts, actionable on their own, rather than a series of separate acts that collectively constituted one unlawful practice); *see also Carpinteria Valley Farms, Ltd. v. County of Santa Barbara*, 344 F.3d 822 (9th Cir.2003) (rejecting the continuing violation theory where plaintiff alleged seven incidents of selective enforcement by City, in violation of his equal protection rights, finding that the incidents were discrete acts). In sum, any discrete, allegedly discriminatory acts are time-barred even if they enjoy a close relation to other discrete acts falling within the statute of limitations.

 I begin with the alleged instance of selective enforcement occurring during August of 2001. Because, under the old scheme of § 340(3), plaintiff's claim expired on August of 2002, it cannot benefit from the new two-year statute of limitations. This claim is therefore barred and must be dismissed.[13] Plaintiff's claims arising from alleged occurrences during January of 2000 and July of 2003, however, are timely. While the claim based on the January 2002 incident would be untimely under the one-year limitations period, the current statute of limitations applies to this claim, since, on January 1, 2003, it was not already barred.

In addition to the limitations bar, defendants maintain that the plaintiff fails to allege a prima facie case. I must agree.

 The " 'purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.' " *Sioux City Bridge Co. v. Dakota County, Neb.*, 260 U.S. 441, 445, 43 S.Ct. 190, 67 L.Ed. 340 (1923)(*quoting Sunday Lake Iron Co. v. Township of Wakefield*, 247 U.S. 350, 352, 38 S.Ct. 495, 62 L.Ed. 1154 (1918)). In order to bring such a claim, the plaintiff must allege that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 565, 120 S.Ct. 1073.[14]

 Plaintiff alleges that the City impeded the development of his property by the imposition of arbitrary conditions. The facts, as alleged, show a history of city official animosity and a sporadic series of independent decisions relating to permits and other requirements. Plaintiff's complaint alleges that the requirements and conditions imposed have been for "no purpose," thus sufficiently alleging that the treatment had no rational basis. Nowhere, however, does plaintiff allege that he was treated differently from others similarly situated. Accordingly, plaintiff's equal protection claim is deficient and must be amended to allege this latter element, if he can fairly do so.

### 3. *Right to Pursue Profession*

Plaintiff avers that his complaint sufficiently states a cause of action under the

---

13. Although this cause of action is dismissed, the time-barred event can be used by plaintiff "as evidence to establish motive and to put the timely-filed claims in context." *Carpinteria Valley Farms, Ltd. v. County of Santa Barbara*, 344 F.3d 822, 829 (9th Cir.2003) (*citing RK Ventures*, 307 F.3d at 1062).

14. Plaintiff properly brings his equal protection cause of action as a "class of one," since it is not necessary for him to allege membership in a class or group. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000).

Fourteenth Amendment because the defendants subjected him to a "malicious campaign ... to deny him an opportunity to earn a living." Pl's Oppo. to Mot. to Dismiss at 1–2. I do not examine whether this claim is timely, however, because, as I explain below, he does not state a claim for which relief may be granted.

 It is established that property rights protected by the due process clause of the Fourteenth Amendment are ordinarily derived from and measured by state law. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Liberty interests, however, may be defined by the Due Process Clause itself. *Planned Parenthood v. Casey*, 505 U.S. 833, 847–849, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992); *Meyer v. Nebraska*, 262 U.S. 390, 399–403, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). In this regard, it has been held that "[t]he Fourteenth Amendment guarantees an individual the right to engage in any of the common occupations or professions of life. Such a right is both a 'liberty' and 'property' right protected from state deprivations or undue interference." *Keker v. Procunier*, 398 F.Supp. 756, 760 (E.D.Cal.1975)(*citing Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)); *Greene v. McElroy*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Larkin v. Bruce*, 352 F.Supp. 1076 (E.D.Wis. 1972). The High Court, however, has delimited the circumstances where governmental interference with one's profession amounts to a violation of the right to pursue a profession.

In *Conn v. Gabbert*, 526 U.S. 286, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999), the Court found that an attorney who was served with and searched pursuant to a warrant while his client was testifying, was not deprived of his right to engage in his profession. The Court compared this "brief interruption" of his profession with a complete prohibition, holding that the latter circumstances raised a due process claim, but the former did not. While the Supreme Court did not address intermediate circumstances, the Ninth Circuit has read *Gabbert* as requiring "a complete prohibition" before a due process claim may lie. *See Lowry v. Barnhart*, 329 F.3d 1019, 1022 (9th Cir.2003); *Dittman v. California*, 191 F.3d 1020, 1029 (9th Cir. 1999).[15]

 In the matter at bar, plaintiff claims a string of incidents occurring over three years in which the City of Shasta Lake obstructed or interrupted his housing development projects. Although he asserts that the defendants' conduct has made it more difficult for him to engage in his occupation, he does not allege that the City or its agents' conduct completely denied him the right to do so. Accordingly, plaintiff cannot successfully state a cause of action predicated on the denial of his right to practice his profession and his claim must be dismissed.

#### 4. *Claims against defendants Reed Boilon & Carla Thompson*

The defendants argue that the complaint does not contain any facts which give rise to any cause of action against defendants Boilon and Thompson. While defendants

---

**15.** Prior to *Gabbert*, a judge of this court held that state officials violated an attorney's right to pursue his profession where prison regulations prohibited him from having the "privacy and freedom from intrusion essential to the attorney-client relationship," and such circumstances supported a claim under the Fourteenth Amendment. *See Keker v. Procunier*, 398 F.Supp. 756, 761 (E.D.Cal.1975). The viability of *Keker* after *Gabbert* is uncertain, but need not be resolved here.

ask that the claims against defendant Boilon and Thompson be dismissed, they do not explain why the facts alleged are insufficient. The motion, being essentially unsupported, will be denied.

## B. IMMUNITY

 Finally, I address defendant's contention that plaintiff's complaint must be dismissed because any actions alleged to have violated plaintiff's rights were protected by state law. The defendants cite to various state laws to show that they are entitled to qualified immunity. It is well settled, however, that "[i]mmunity under § 1983 is governed by federal law; state law cannot provide immunity from suit for federal civil rights violations." *Wallis v. Spencer*, 202 F.3d 1126, 1144 (9th Cir.2000)(*citing Martinez v. California*, 444 U.S. 277, 284, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980)). Defendants' argument therefore fails.[16]

## C. MOTION FOR A MORE DEFINITE STATEMENT

In the alternative, the defendants ask that the court grant their motion for a more definite statement. Given that the plaintiff will have to amend his complaint to maintain his causes of action for false arrest and imprisonment and violation of his equal protection rights, it is unnecessary to examine this motion.

## IV.

## CONCLUSION

1. Defendant's motion to dismiss is GRANTED;

2. Plaintiff is granted thirty (30) days to file an amended complaint consistent with this order;

3. Defendants' motion for a more definite statement is DENIED; and

4. The Amended Complaint heretofore filed is ordered STRICKEN.

IT IS SO ORDERED.

---

16. While arguments might be made concerning qualified immunity where state law protects accused conduct, defendants do not make them, and it is hardly this court's duty to make them for defendants.