NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. AZ-12-1308-JuTaAh |
| GREER LESLIE WELLS and MONTIE LEE WELLS, | Bk. No. 11-12232-RTB |
| Debtors. | |
| GREER LESLIE WELLS; MONTIE LEE WELLS, | |
| Appellants, | |
| v. | M E M O R A N D U M* |
| DEUTSCHE BANK NATIONAL TRUST CO., | |
| Appellee. | |

Argued and Submitted on June 21, 2013
at Phoenix, Arizona

Filed - July 10, 2013

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Redfield T. Baum, Bankruptcy Judge, Presiding
_____

Appearances:   Appellants Greer Leslie Wells and Montie Lee
                Wells argued pro se; David Winthrop Cowles, Esq.,
                of Tiffany and Bosco, P.A., argued for appellee
                Deutsche Bank National Trust Co.
                _____

_____

     * This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

-1-

Before:  JURY, TAYLOR, and AHART[**], Bankruptcy Judges.

Chapter 13[1] debtors, Greer Leslie Wells and Montie Lee Wells, filed a series of motions seeking to dismiss or disallow the proof of claim (POC) filed by Deutsche Bank National Trust Co., Trustee (Bank) on the grounds that Bank lacked standing. The bankruptcy court denied debtors' first series of motions on February 28, 2012 (2/28/12 Order). The court later denied debtors' motion and amended motion for reconsideration of its 2/28/12 ruling by order entered on March 30, 2012 (3/30/12 Order). Debtors did not appeal this order. Instead, they filed a second series of motions, which were functionally the equivalent of their prior motions relating to Bank's lack of standing. The bankruptcy court denied these motions by order entered on July 10, 2012 order (7/10/12 Order). Debtors appeal from this order.

Debtors argue on appeal that Bank lacks standing to file a POC in their case for many reasons. However, because the 3/30/12 Order was a final order, we do not have subject matter jurisdiction to consider debtors' arguments further in this appeal. Moreover, debtors' second series of motions filed after entry of the 3/30/12 Order involved the same transactional

---

[**] Hon. Alan M. Ahart, United States Bankruptcy Judge for the Central District of California, sitting by designation.

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

nucleus of facts as those asserted in their previous motions. Therefore, their later motions were barred by claim preclusion. Accordingly, we AFFIRM the 7/10/12 Order appealed from on this ground.

## I.   FACTUAL AND PROCEDURAL HISTORY

**A.   Debtors' Mortgage, Assignment, and Default**

In 2004, debtors moved into the property located on North 55th Avenue in Glendale, Arizona, owned by Greer's mother. At some point, Greer's mother quit claimed the property to her. Greer then refinanced the property.

On September 25, 2006, Greer obtained a loan in the amount of $164,000 from American Brokers Conduit (ABC). The note was secured by a deed of trust (DOT) recorded against the property. The DOT showed Greer as the borrower, Capital Title Agency, Inc. as the trustee, and Mortgage Electronic Registration Systems (MERS) as the beneficiary, acting solely as nominee for lender ABC and its successors and assigns.

The note was subsequently transferred twice and contained two indorsements: (1) from ABC to Impac Funding Corporation (IFC), without recourse, signed by Daniel Lesterling, Assistant Secretary for ABC and (2) a blank indorsement executed by Jennifer Moua, an authorized signatory for IFC.

MERS assigned its beneficial interest under the DOT and its rights, if any, under the note to Bank (Assignment), as Trustee for the Certificateholders of ISAC 2006-5, Mortgage Pass-Through Certificates, Series 2006-5 (Trust). Carmelia Boone, listed as an assistant secretary of MERS, executed the DOT assignment. Boone's signature was notarized on August 11, 2010, by Connie L.

Briscoe, a Texas notary.

In April 2010, debtors defaulted on the loan. Thereafter, a foreclosure process was initiated.

**B.   The Bankruptcy Proceedings**

On April 28, 2011, debtors filed a joint chapter 13 petition to stop the foreclosure. Debtors listed Bank as a disputed secured creditor in their schedules. On July 14, 2011, debtors filed amended schedules. They listed no secured creditors in Schedule D and listed MERS as an unsecured creditor in Schedule F with a claim in the amount of $68,600 "subject to setoff."

Also on July 14, 2011, debtors filed a first amended plan which provided for monthly payments of $50 to the chapter 13 trustee. Debtors' plan proposed to make the payments on their property directly to MERS and stated that no arrearages were due.

On September 27, 2011, the law firm of Tiffany & Bosco, P.A. filed a notice of appearance and request for notice in the case on behalf of Bank. The law firm filed a proof of claim (POC) on behalf of Bank, Claim #10, asserting a secured claim against debtors' property in the amount of $160,069.27. The POC listed Bank as the creditor, but indicated that notices and payments should be sent to Bank of America, N.A. (BOA). The POC also listed $13,138.38 of arrearages due (monthly payments 4/1/10-4/1/11 @ $995.26 per month). Attached to the POC was a copy of the note signed by Greer, the DOT, and the Assignment.

On October 4, 2011, Bank objected to debtors' amended chapter 13 plan because it did not provide for payment of

-4-

arrearages owed to Bank. Bank requested that the arrearages as set forth in its POC be paid through the plan.

### Debtors' First Motion to Dismiss Claim #10

On October 25, 2011, debtors filed a motion to dismiss Claim #10 for failure to state a claim for which relief can be granted.[2] Debtors' alleged that they did not have any documents which verified that Bank had standing to file the POC in their bankruptcy case.

On November 11, 2011, Bank responded, asserting that it had standing to file the POC due to the Assignment of the DOT. Bank further maintained that ABC endorsed the note to IFC and, in turn, IFC then endorsed the note in blank which gave Bank standing.

On November 29, 2011, debtors replied by contending: (1) a copy of the note endorsed in "blank" was not proof of Bank's standing; (2) they sent a letter to Bank at the address shown on the notice of trustee's sale and Bank responded by stating that it was unable to identify the property or the mortgagor associated with it as a mortgage for which Bank was acting as trustee or custodian; (3) BAC Home Loans Servicing also alleged it was the "creditor" and "lender"; (4) MERS had no authority to assign, appoint or substitute a trustee, or assign the promissory note; and (5) a preliminary securitization audit suggested that the note did not make it into the trust. Debtors

---

[2] If Bank's proof of claim is analogized to a complaint then debtors' objections are like motions to dismiss for failure to state a claim on which relief can be granted. Heath v. Am. Express Travel Related Servs. Co. (In re Heath), 331 B.R. 424, 435-36 (9th Cir. BAP 2005).

also requested verified documents that showed Bank was the "holder in due course." Finally, they questioned whether the Bank was aware of "this action or authorized this action by delegating authority to Tiffany & Bosco, P.A. . . . ."

Attached to debtors' reply were two letters: the letter from debtors to Bank requesting various documents associated with their mortgage and the response letter from Bank to debtors stating that it could not identify the property or mortgagor associated with it as a mortgage for which Bank was acting as trustee.

On December 6, 2011, the bankruptcy court heard debtors' motion and directed the parties to file documentation in support or opposition to the POC. The court continued the hearing to February 1, 2012.

On January 13, 2012, Bank submitted the declaration of Duane Dumler, the Assistant Vice President for BOA, as servicer for Bank. Dumler declared that he had personal knowledge of the records pertaining to the loan including that MERS had assigned the DOT to Bank and that the note was endorsed in blank which gave Bank "standing" to file the POC. Dumler also mistakenly stated that both debtors had executed the note secured by the real property.

**Debtors' Second Motion to Dismiss Claim #10**

On January 13, 2012, before the court had ruled on the first motion, debtors filed a second motion to dismiss Claim #10. Debtors maintained that the court lacked subject matter jurisdiction because Bank provided no "authoritative evidence, electronic or otherwise that [Bank] is in possession

-6-

or is in control of a single, unique, identifiable, unalterable copy of a note that identifies [Bank] as the secured creditor . . . ."

Debtors also alleged that the closing date of the Trust was December 21, 2006 and that the assignment from MERS to Bank regarding the note was recorded approximately three and one-half years later — too late to be included in the Trust.

## Debtors' Motion to Dismiss For
## Lack of Subject Matter Jurisdiction

On January 24, 2012, debtors filed a motion to dismiss Claim #10 for lack of subject matter jurisdiction. Debtors asserted that Bank failed to provide any authenticated evidence or witnesses in support of its POC. On the same day, debtors filed a point by point rebuttal to the declaration of Dumler. Generally, debtors alleged that Dumler's statements were not authenticated and that his statement that both debtors had executed the note with respect to the property was false. Debtors continued to maintain that Bank's claim was unenforceable against them.

On January 27, 2012, Bank filed a motion to strike debtors' second motion to dismiss and their motion to dismiss for lack of subject matter jurisdiction. Bank argued that debtors had already filed a motion to dismiss to which it had responded, the points raised in debtors' subsequent pleadings should have been raised in their first motion, and a hearing had already been scheduled for February 1, 2012.

## The Bankruptcy Court's Ruling and 2/28/12 Order

On February 1, 2012, the bankruptcy court heard debtors'

-7-

first motion to dismiss Claim #10 and took the matter under advisement.

On February 14, 2012, the bankruptcy court issued a Minute Entry/Order denying debtors' motion. The court found that based upon the copy of the note, DOT, Assignment, and declaration of Dumler, Bank established its right to enforce the debt and file the POC. The court observed that debtors listed the disputed secured lien holder in their schedules and also stated in their chapter 13 plan that they would pay directly to the creditor the payments owed on their residence.

On February 28, 2012, the bankruptcy court entered the order denying debtors' motion to dismiss Claim #10, debtors' second motion to dismiss Claim #10, and debtors' motion to dismiss for lack of subject matter jurisdiction.

**Debtors' Motion for Reconsideration**

On February 22, 2012, prior to the bankruptcy court's entry of an order on its February 14, 2012 ruling, debtors filed a motion for reconsideration. Debtors continued to maintain that there was no authenticated evidence that proved Bank's standing.

On February 27, 2012, Montie filed an affidavit which stated that he did not sign the promissory note or DOT related to the property.

**Debtors' Amended Motion for Reconsideration**

On March 12, 2012, debtors filed an amended motion to reconsider. That motion essentially reiterated their previous points.

On March 27, 2012, Bank filed a response to debtors' amended motion for reconsideration. Bank argued that debtors'

-8-

motion set forth no grounds for reconsideration under Civil Rules 59(e) or 60(b).

### Debtors' Motion to Disallow Claim

On March 14, 2012, before the bankruptcy court had a chance to rule on their motion for reconsideration, debtors filed a motion to disallow Claim #10. Debtors alleged that Bank failed to timely object to their amended plan and thus it was too late to include Bank in their plan.

On March 27, 2012, Bank filed a motion to strike debtors' motion to disallow Claim #10 based on Civil Rule 12(f). Bank maintained that its failure to object to debtors' plan was not grounds for disallowing a claim. Bank further requested the bankruptcy court to enjoin debtors from filing any more pleadings concerning Claim #10 and requested attorneys' fees.

### The 3/30/12 Order

On March 30, 2012, the bankruptcy court issued a Minute Entry/Order with respect to debtors' motion for reconsideration and amended motion for reconsideration. The court found no grounds to reconsider its February 14, 2012, Minute Entry/Order or the 2/28/12 Order which denied debtors' motions at Dkt. ##54, 64, and 65.

In considering debtors' later filed motion to disallow Bank's claim, the court pointed out that Bank, although not required to file a POC, timely filed its POC on the claims bar date. The court further observed that Bank's POC did not affect its rights under the mortgage because Bank's lien passed through the bankruptcy unaffected. Finally, the bankruptcy court found that the deadline to file a plan objection was not

-9-

jurisdictional and the court was well within its powers to allow a late-filed objection. The bankruptcy court denied, <u>with prejudice</u>, debtors' objection to Bank's POC. (Emphasis added).

Debtors did not file a timely appeal from this order.

**Debtors' Motion for Order to Produce**

On April 12, 2012, debtors filed an objection to Bank's motion to strike and a motion for order to produce. In their motion for order to produce, debtors again requested the court to determine who the "correct parties are" and set a hearing to determine the standing of the "alleged secured creditors in question."

On April 30, 2012, Bank responded to debtors' motion to produce and again requested attorneys' fees for having to respond to debtors' motion. Bank noticed a hearing on the matters.

**Debtors' Emergency Motion to Dismiss**

On June 5, 2012, debtors filed an emergency motion to dismiss for refusal to produce evidence. Attached to debtors' motion were three letters: (1) a letter from Bank's attorneys stating that they were in default with their postpetition payments; (2) a response letter from debtors to Bank's attorneys requesting various documents relating to the foreclosure of their property and Bank's authority to conduct business in the State of Arizona; and (3) a further response letter from Bank's attorney stating that debtors already had documentation in the foreclosure file or it was within the public records and that the other information requested was protected by attorney-client privilege, the work-product doctrine, or protections against

disclosure of proprietary or confidential information.

## The 7/10/12 Order and Debtors' Appeal

On June 6, 2012, the bankruptcy court heard debtors' objection to Bank's motion to strike, debtors' motion to disallow claim, and the Bank's motion to quash and request for attorneys' fees.  The court denied debtors' motions and ruled that the Bank did not need to respond to any further objections filed by debtors unless directed otherwise by the court.  The bankruptcy court also authorized Bank to file an affidavit and application with respect to their fee request.  At the hearing, the bankruptcy court informed debtors that they were free to appeal.

On June 12, 2012, debtors filed a notice of appeal (NOA) regarding the court's ruling on June 6, 2012.

On July 10, 2012, the bankruptcy court entered the order with respect to the June 6, 2012 hearing.  The 7/10/12 Order reiterated some of what was contained in the bankruptcy court's 2/28/12 Order and 3/30/12 Order.  Specifically, the order denied the debtors' motion to dismiss claim #10, second motion to dismiss claim #10, motion to dismiss for lack of subject matter jurisdiction, motion for reconsideration, amended motion for reconsideration, and motion to disallow claim #10.  The order denied debtors' motion to produce and emergency motion to dismiss.

On July 16, 2012, debtors filed an amended NOA from the 7/10/12 Order.

## II.  JURISDICTION

The bankruptcy court had jurisdiction over this proceeding

-11-

under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (K). We have jurisdiction under 28 U.S.C. § 158, subject to our discussion set forth immediately below.

Debtors' series of motions which triggered the various orders define the scope of what we decide in this appeal. Our focus is on the 3/30/12 Order which was a final order disposing of debtors' motions to dismiss or disallow Bank's POC and motions for reconsideration (Dkt. ## 54, 64, 65, 72, 76, and 77). An order is final when it fully adjudicates the issues raised and clearly manifests the court's intent to be its final act in the matter. Brown v. Wilshire Credit Corp. (In re Brown), 484 F.3d 1116, 1120 (9th Cir. 2007) (quoting Slimick v. Silva (In re Slimick), 928 F.2d 304, 307 (9th Cir. 1990)).

The 3/30/12 Order on its face evidenced the judge's intent that the order was final. Although no formal words of judgment are necessary to convey finality, the Minute Entry/Order, stated: "IT IS ORDERED denying the motion and amended motion to reconsider and IT IS FURTHER ORDERED denying, with prejudice, the objection to [Bank's] proof of claim." (Emphasis added). This language amply demonstrates that a final disposition was intended on issues relating to Bank's standing to file a POC in debtors' case. See Slimick, 928 F.3d at 308.

Moreover, the 3/30/12 Order states that it was an order, it was mailed to the parties and counsel, signed by the judge, and entered on the docket. See Ingram v. ACandS, Inc., 977 F.2d 1332, 1338-39 (9th Cir. 1992). Indeed, debtors must have recognized that the court's ruling on February 14, 2012 and its

-12-

subsequent entry of the 2/28/12 Order were intended to be a final disposition because they prematurely filed a motion for reconsideration of the court's ruling and filed an amended motion for reconsideration after the court entered the 2/28/12 Order. Nonetheless, debtors did not file a timely appeal of the 3/30/12 Order disposing of their tolling motions for reconsideration.

Instead, after debtors lost, they filed a second series of motions: the motion to produce and emergency motion to dismiss. These motions were not of the type sufficient to toll the time for appeal of the 3/30/12 Order under Rule 8002(b). Moreover, because the 3/30/12 Order was sufficient to trigger the time to appeal, we cannot construe the language of the 7/10/12 Order that restates the denial of debtors' first series of motions (Dkt. ##54, 64, 65, 72, 76 and 77) as nullifying the 3/30/12 Order for purposes of filing a timely notice of appeal. We thus conclude that we do not have subject matter jurisdiction to consider issues regarding Bank's standing in this appeal. As a result, we review only the bankruptcy court's denial of debtors' second series of motions — the motion to produce and emergency motion to dismiss for Bank's failure to produce evidence.

### III.  ISSUES

A.  Whether the bankruptcy court erred in denying debtors' motion to produce; and

B.  Whether the bankruptcy court erred in denying debtors' emergency motion to dismiss for Bank's refusal to produce evidence.

## IV. STANDARDS OF REVIEW

We review the bankruptcy court's denial of debtors' motion to produce (evidence) for an abuse of discretion. See United States v. Rivera-Relle, 333 F.3d 914, 918 (9th Cir. 2003).

We construe debtors' emergency motion to dismiss for refusal to produce evidence as a motion for sanctions under Civil Rule 37(b)(2). The decision to impose sanctions under Civil Rule 37 is in the trial court's discretion. United States v. Sumitomo Marine & Fire Ins. Co., 617 F.2d 1365, 1369 (9th Cir. 1980). A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible, or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

We may affirm the bankruptcy court's decision on any ground fairly supported by the record. Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1076-77 (9th Cir. 2003).

## V. DISCUSSION

After examining debtors' motion to produce and emergency motion to dismiss for Bank's failure to produce evidence, we conclude that these motions were functionally the equivalent to debtors' first series of motions, which the bankruptcy court denied in the 3/30/12 Order. Once again, debtors' second series of motions attacked the Bank's standing to file its POC in their case based on the Bank's lack of evidence. As we explain below, the doctrine of claim preclusion prevented debtors from collaterally attacking the court's 3/30/12 Order through their

-14-

subsequently filed motions.[3]

"Res judicata, also known as claim preclusion, prohibits the litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." Cabrera v. City of Huntington Park, 159 F.3d 374, 381 (9th Cir. 1998). The bankruptcy court's 3/30/12 Order precluded debtors' subsequently filed motions if the following three elements are established: (1) the bankruptcy court's 3/30/12 Order denying debtors' motions to dismiss Claim #10 was a final judgment; (2) debtors' motions filed prior to the issuance of the 3/30/12 Order involved the same parties as debtors' subsequently filed motions; and (3) there is an identity of claims between debtors' motions filed prior to the 3/30/12 Order and those subsequently filed. Id. All three elements are met in this case.

In Siegel v. Fed. Home Loan Mortg. Corp., 143 F.3d 525, 529 (9th Cir. 1998), the Ninth Circuit held that "the allowance or disallowance of a claim in bankruptcy is binding and conclusive on all parties or their privies, and being in the nature of a final judgment, furnishes a basis for a plea of res judicata." Here, as noted above, the bankruptcy court's 3/30/12 Order was a

---

[3] Although the bankruptcy court did not explicitly reach the issue of claim preclusion, it implicitly applied the doctrine by ordering that Bank did not need to respond to any further motions filed by debtors unless directed otherwise by the court. Moreover, "'[w]e may affirm the bankruptcy court on any ground supported by the record, even if the ground is not relied on by the [bankruptcy] court.'" Tahoe-Sierra Pres. Council, Inc., 322 F.3d at 1076-77; see also Olson v. Morris, 188 F.3d 1083, 1085 (9th Cir. 1999) ("We may affirm on any ground supported by the record, and affirm the district court on the grounds of res judicata.").

-15-

final order that allowed Bank's POC.

There is also no dispute that all of debtors' motions involved a dispute between debtors and Bank.

Finally, an identity of claims exists between debtors' motions filed prior to issuance of the 3/30/12 Order and those subsequently filed. In Siegel, the Ninth Circuit employed a four factor test to determine whether successive actions involve the same claims: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." 143 F.2d at 529. In Int'l Union of Operating Eng'rs-Employers Constr. Indus. Pension, Welfare & Training Trust Funds v. Karr, 994 F.2d 1426, 1429 (9th Cir. 1993), the Ninth Circuit explained that the "last of these criteria is the most important." The Karr court held that if both claims in the different actions arose from the same "transactional nucleus of facts" and the claims in the second action could have been brought in the first, that alone would be sufficient to find that the second action is barred by the first. 994 F.2d at 1430.

Debtors' motions all involved the same transactional nucleus of facts. Debtors alleged Bank did not have standing to file the POC because it failed to prove that it was the holder of their note. As a result, debtors' second series of motions required the bankruptcy court to undertake the same analysis as

-16-

required under their first series of motions which fully litigated the standing issue and resulted in a final order which was not timely appealed. To the extent debtors raised any new grounds to challenge the Bank's POC in their second series of motions, those additional grounds could have been raised in their motions filed prior to entry of the 3/30/12 Order. Because all the elements for claim preclusion have been met, we conclude that the bankruptcy court's 3/30/12 Order precluded debtors' second series of motions which addressed the same subject matter.

The policies underlying claim preclusion support our conclusion. Claim preclusion "is motivated primarily by the interest in avoiding repetitive litigation, conserving judicial resources, and preventing the moral force of court judgments from being undermined." Haphey v. Linn Cnty., 924 F.2d 1512, 1518 (9th Cir. 1991), rev'd in part on other grounds, 953 F.2d 549 (9th Cir. 1992) (en banc). Debtors' serial filing of motions concerning the same subject matter was the reason the bankruptcy court ultimately ruled that Bank did not need to respond to any further motions filed by debtors. Application of the claim preclusion doctrine is appropriate under these circumstances. To hold otherwise would allow debtors to perpetually toll the time for filing a NOA and continue litigation indefinitely by repeatedly filing virtually identical motions without consequence.

Even if debtors' second series of motions filed after the entry of the 3/30/12 Order could somehow be considered independent of their previously filed motions embodied in that

-17-

order, debtors' briefs do not clearly articulate how the bankruptcy court erred in denying debtors' later filed motions. Under these circumstances, we cannot say it was an abuse of discretion for the bankruptcy court to deny debtors' subsequently filed motions which were an attempt to get yet another bite at the apple.

## VI.  CONCLUSION

For the reasons stated, we AFFIRM.